Laun and another, Appellants, vs. KIPP, Respondent.

*November 21, 1913—January 13, 1914.*

*Pleading: Sufficiency of complaint: Fraud, how alleged: Equity: Restraining enforcement of judgment: Jurisdiction: Courts: Fraud, intrinsic and extrinsic: Trusts and trustees: Evidence.*

1. In testing a complaint for sufficiency all facts expressly alleged and all reasonably inferable from the whole pleading as well, giving to the language thereof the most liberal construction in favor of the plaintiff which it will reasonably bear and without necessary reference to the prayer, are to be regarded as stated; the ultimate question being, does the pleading, viewed as indicated, show the rights of plaintiff to have been remediably invaded or a wrong in that regard to be remediably threatened.

2. The rule that fraud must be pleaded by a statement of the facts constituting the fraud and that an allegation that a particu-

lar act was fraudulent is not sufficiently precise and definite, is subordinate to the foregoing rule and the one that mere indefiniteness does not go to sufficiency.

3. If the term "fraudulent" or "fraudulently" is used in a pleading in such a way as to state facts in legal effect, so that with its context the subsidiary facts are reasonably inferable, the charge of fraud is to be regarded as sufficiently pleaded as regards a general demurrer, though the pleading may be open to a motion to make more definite and certain.

4. Previous decisions to the effect that to allege an act to have been fraudulently done does not tender an issue of fact for want of precision and definiteness, but is a mere conclusion of law, must be restrained to the now recognized spirit of the Code requiring obvious matters of mixed law and fact, when pleaded in their legal effect, to be regarded as matter of fact, and all facts reasonably inferable from a pleading, resolving all reasonable doubts in favor of the pleader, to be deemed sufficiently stated, upon a challenge for insufficiency.

5. An independent action to prevent the enforcement of a judgment because of happenings after its rendition, by a practice so settled as to be regarded jurisdictional, cannot be maintained in the same or any other court, the remedy being confined to proceedings by motion in the original action.

6. Equity having properly acquired jurisdiction to restrain the enforcement of a judgment upon the ground of its being unconscionable *ab initio*, it may deal with the subject of whether such judgment should not be enforced because of happenings subsequent to its rendition where the later wrong, perpetrated or threatened, is germane to that characterizing the judgment originally.

7. As a general rule, any fact which clearly proves it to be against conscience to execute a judgment and of which the injured party might have availed himself in the original action, but was prevented by fraud or accident unmixed with any fault or negligence of himself or his agents, will justify an application to a court of chancery to prevent such execution.

8. The rule above stated is one of judicial policy applicable to all ordinary situations and not one of limitation of judicial power,—the power itself being as broad as the maxim' "There is no wrong without a remedy."

9. The public policy requiring the general rule to be as stated, does not militate against the power of equity going further in exceptional situations where the ends of justice clearly require it.

10. No rule can be formulated setting a definite boundary beyond which a court of equity cannot go as matter of power, or will

not go under any circumstances, as matter of sound public policy, in preventing the enforcement of an unconscionable judgment.

11. The fraud which will justify a court of equity in preventing the enforcement of an unconscionable judgment may be intrinsic as well as extrinsic,—the test being, not the nature of the fraud, but the injustice of wrongfully impoverishing one for the enrichment of another.

12. Though equity may restrain enforcement of a judgment which is unconscionable because of fraud intrinsic as well as fraud extrinsic, whether the court should interfere in such cases being matter of wise administration rather than of power, fraud of the latter kind would call successfully for judicial interference in circumstances where fraud intrinsic would not.

13. Where a person occupies trust relations to another it is his duty to speak whenever the interests of such other would otherwise be prejudiced; he cannot legally or equitably, remain silent and secure to himself an advantage over such other.

14. In case of a person sustaining the relation of trustee to another, he owes to such other the duty of making a full disclosure of all matters appertaining to the trust, and neglect to do so to such other's injury, knowing or having good reason to believe that silence will so result, is a fraudulent act and the duty exists independently of inquiry in judicial proceedings, and failure of the trustee in that regard, persisted in in judicial proceedings to the prejudice of such other and advantage to himself, may be regarded as fraud extrinsic under the rule in *U. S. v. Throckmorton*, 98 U. S. 61, as well as fraud intrinsic.

15. In case of a judicial remedy in equity being invoked to prevent the enforcement of a fraudulent judgment, the rule that facts relied upon for a recovery on the ground of fraud must be established by clear and satisfactory evidence applies and with considerable emphasis.

[Syllabus by MARSHALL, J.]

APPEAL from an order of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Reversed.*

Action to restrain enforcement of a judgment because of its being inequitable.

This is the substance of the complaint: In an action for specific performance, in the circuit court for Milwaukee county, Wisconsin, wherein the defendant herein was plaint-

iff, and the plaintiffs herein were defendants, it was decided, June 23, 1910, that the former contracted to sell to the latter who agreed to buy from the former the corporate stock, business, and property of the B. A. Kipp Company, giving therefor the fair value October 1, 1909, a specified inventory to be regarded *prima facie* proof thereof; that *Mr. Kipp*, who had been in possession of the subject of the transaction from the date of the contract, administered the same as trustee for plaintiffs; that it was necessary to measure the amount they should pay by the fair value of the subject October 1, 1909, and also that defendant should account as trustee. The questions of value and accounting were referred to John A. Harper and *Mr. Kipp* was made receiver in the meantime; judgment to await confirmation of the report. In due course, a referee hearing was had; defendant offering in evidence only a statement of the financial condition of the B. A. Kipp Company, June 23, 1910—nothing definitely showing administration by him as trustee subsequent to the date of the sale. The statement was not represented as a trustee's account nor supposed by plaintiffs or their attorneys to be such, nor did they suppose it would be considered such by the referee. It appertained to the relations between defendant and the B. A. Kipp Company covering the period prior to October 1, 1909. Plaintiffs had no concern therewith, so waited for some disclosure of the transactions as trustee. They relied upon a report not being made without such a definite disclosure and opportunity to examine and contest it. The statement, viewed as a trustee disclosure, was grossly fraudulent, in that it omitted $20,000, more or less, which should have been charged defendant as trustee and credited on the purchase price of the property in closing the litigation by judgment. The account, in the particular form, was exhibited to deceive plaintiffs, their attorneys, and the referee. The latter was deceived thereby. Without citing defendant to account as trustee, the receiver reported "that *B. A. Kipp*

as receiver in this action, has made and filed his report, dated
July 16, 1910, which report is filed herewith and marked
Exhibit 6 and contains his accounts down to the 23d day of
June, 1910, and there being no objection on the part of de-
fendant to said report, the same is recommended for ap-
proval." Plaintiffs' contested confirmation of such report
upon the ground that there had not been any accounting as
trustee. Defendant, however, by his counsel, fraudulently
induced the circuit court to confirm the report and thereafter
prevented said plaintiffs from procuring any relief there-
from in the supreme court by representing that the circuit
court could correct any error in such report upon the settle-
ment of the account as receiver. The circuit court, in fact,
confirmed the report thinking that it did not include an ac-
counting as trustee, and that the omission was without preju-
dice because the matter could be taken up, later, as part of
the accounting as receiver. Judgment, however, was ren-
dered, in form, so as to cover the trustee period, although such
period was in fact ignored by the court. The judgment was
for the entire purchase price of the subject of the sale, un-
diminished by any receipts therefrom by defendant during
the trust period.

Plaintiffs made an unsuccessful effort in the circuit court
and also in the supreme court to have the judgment cor-
rected, so as to give them the benefit, by a credit upon the
purchase price of the property, of what defendant realized
therefrom during the trustee period, but were prevented by
the attitude of defendant's counsel, inducing the belief that
the judgment would not preclude plaintiffs from obtaining
redress from their alleged grievance at the accounting as
receiver. Subsequent to the trustee period, defendant re-
ceived from the property $34,000, more or less, or more than
the sum equitably due him.

Plaintiffs appealed from the judgment and it was affirmed
without determining the amount due from defendant to

them.   Thereafter they petitioned the circuit court for an accounting during the trustee period and application of any sum chargeable to defendant upon the judgment.   The court decided that there was no authority to change the judgment, which had become that of the supreme court, and suggested relief for the wrong complained of should be sought in an independent action.

Later the accounting by defendant as receiver was, in due course, taken up, but his attorney refused to go into his transactions during the trustee period.   Thereupon it was stipulated, in open court, that the account covering the receivership period might be approved without prejudice to the right of plaintiffs to an accounting for the trustee period and to inquire into the correctness of the accounts upon the books of the company, or otherwise, purporting to indicate the amount paid, or unpaid upon the judgment.   The circuit court directed an order to be drafted accordingly and that before entry it should be submitted to plaintiffs' attorneys. Nevertheless, an order was prepared for judicial approval without the saving clause suggested and the judge was fraudulently induced to sign it.   As soon as plaintiffs' attorneys were informed thereof they called attention of the circuit court thereto, whereupon the judge directed the order to be vacated and one to be entered according to the decision.   He died before that could be done.

Defendant fraudulently claims there is still due him on the judgment some $17,000 "and fraudulently claims that he is not obliged to credit or apply upon said judgment the larger part, if not all, of said sums received and retained by him out of the assets and business of said B. A. Kipp Company" during the trustee period, "and fraudulently claims that said judgment" "together with said fraudulent order approving the account of said *B. A. Kipp* as receiver and discharging him, bars and prevents said plaintiffs from having any determination of the amount so received by him" during

the trustee period. He has caused an execution to be issued on the judgment on that theory to enforce payment of the aforesaid sum, when, in fact, there is nothing equitably due him. Plaintiffs have no adequate legal remedy to redress such wrong. The judgment, as it stands, appears of record to be a lien on real estate owned by plaintiffs at the time of its entry and thus clouds the title thereto, to their prejudice. On such facts plaintiffs asked for an accounting by defendant respecting his dealings with the property during the trustee period, to have the amount he received therefrom since he was succeeded as receiver applied on the judgment sought to be enforced, or any sum equitably so applicable, and for defendant to be restrained from using such judgment to collect any sum in excess of the balance left after such accounting and application.

There was a demurrer, first, for want of jurisdiction of the defendant or of the subject of the action; second, because of another action pending between the parties covering the same subject matter; third, for insufficiency. The demurrer was sustained, first, because the allegations of fraud were too general; second, for want of diligence in discovering the matters complained of and of bringing them to the attention of the court in the first action; third, for want of jurisdiction to restrain in a second action enforcement of the judgment in the first on account of happenings subsequent to its entry.

For the appellants there was a brief by *N. L. Baker* and *W. J. Zimmers,* and oral argument by *Mr. Baker.*

*Paul D. Durant,* for the respondent.

MARSHALL, J. Appellants' story as related in the complaint, indicates that they have been the victims, to their loss in the sum of $20,000 more or less, of a systematic course of deception, practiced by respondent and his attorneys, of such subtle character as to impose upon the circuit and this court; securing and maintaining an unconscionable judgment.

The court below seems to have thought the complaint was barren of any statement warranting judicial relief from the judgment as originally inequitable, because of absence of specific allegations of fact-respecting the acts constituting the alleged fraud, and because of absence of statements of fact showing, affirmatively, reasonable excuse for not discovering the fraud, if there were one, in time to have prevented respondent from prevailing, as he did, in the first action; and does not state any good ground for relief on account of circumstances occurring subsequent to the entry of judgment, since relief of that nature is only obtainable by proceedings in the court as well as the action where the judgment was rendered. Whether the complaint, in any event, states facts sufficient to warrant restraining respondent from enforcing his judgment, was not definitely passed upon below. That is probably the most important question in the case.

Whether the complaint sufficiently charges respondent with securing his judgment by fraud, must be determined by those liberal rules of pleading which have been so many times proclaimed in recent years, and not by the technical rules which the Code makers purposed abolishing.

As has often been said, in the beginning, particularly in *Morse v. Gilman,* 16 Wis. 504, the design of the framers of the Code to abolish all old forms of action and substitute for use in all cases the civil action, with a complaint containing in simple understandable language the plaintiff's story, leaving it for the court to say, regardless of what relief the pleader supposed himself to be entitled to and regardless of the action by any particular name, whether such story calls for any form of judicial relief within the competency of the court to afford, looking at such story, in all its parts, and in the whole, and taking all facts reasonably inferable from the specific allegations as well as those expressly stated,—was fully recognized and given its requisite vitality. But, later, for a time, that was somewhat lost sight of and the court came to test pleadings by something akin to the old rules.

During that period expressions were used in legal opinions indicating that, under all circumstances, an allegation that an act was fraudulently done should be classed as a mere legal conclusion rather than as tendering an issue of fact. It must be appreciated that the Code, as regards the sufficiency of pleadings, has been substantially restored. Technical accuracy in statements of fact is not required. Facts need not, necessarily, be expressly alleged. No very narrow idea is to be indulged in as to what is a legal conclusion and what a matter of fact, or mixed law and fact. Whether the pleader had the right conception of his cause of action according to common-law classification is immaterial. Whether he had the right conception of the relief the facts pleaded entitled him to, or the right relief is covered by the prayer, are likewise immaterial. All reasonable doubts are to be resolved in favor of the pleader. All facts expressly stated and all reasonably inferable therefrom, giving to the language of the pleading the broadest meaning which it will reasonably bear, are to be regarded as sufficiently alleged to meet any challenge for insufficiency. If, viewing the pleading with that large measure of liberality, it discloses a situation warranting any kind of judicial relief, it contains a good cause of action therefor, though very different from that which the pleader supposed himself entitled to.

In all that has been said in an endeavor to restore and entrench the Code beyond any possible danger of its not being permanently given its intended effect, the language of the court, spoken by Dixon, C. J., in *Morse v. Gilman,* 16 Wis. 504, has not been improved upon. It has been quoted again and again and not too often. More and more it should be appreciated so as to prevent any possibility of a complaint being condemned by the ancient rules for testing it. Note the language of the early phrasing of the rule of the Code:

"A complaint to be overthrown by a demurrer or objection to evidence, must be wholly insufficient. If in any portion of it, or to any extent, it presents facts sufficient to constitute

a cause of action, or if a good cause of action can be gathered from it, it will stand, however inartificially these facts may be presented, or however defective, uncertain, or redundant may be the mode of their statement. Contrary to the common-law rule, every reasonable intendment and presumption is to be made in favor of the pleading, and it will not be set aside on demurrer unless it be so fatally defective that, taking all the facts to be admitted, the court can say they furnish no cause of action whatever."

That was broadened, if possible, by the illustrations given of its effect.

It is notable that *Morse v. Gilman, supra,* so dropped out of sight that it is found cited but once, and that shortly after it was decided, on the particular subject matter, until *Miller v. Bayer,* 94 Wis. 123, 68 N. W. 869, which is the commencement of a series of some twenty-four citations, giving it the fullest practicable application. The following are but a few of the many illustrations: *Milwaukee T. Co. v. Van Valkenburgh,* 132 Wis. 638, 112 N. W. 1083; *State ex rel. Leiser v. Koch,* 138 Wis. 27, 34, 119 N. W. 839; *Emerson v. Nash,* 124 Wis. 369, 102 N. W. 921; *Bannen v. Kindling,* 142 Wis. 613, 617, 126 N. W. 5; *Hall v. Bell,* 143 Wis. 296, 299, 127 N. W. 967; *Bruheim v. Stratton,* 145 Wis. 271, 273, 129 N. W. 1092; *Schmidt v. Joint School Dist.* 146 Wis. 635, 639, 132 N. W. 583.

A few excerpts from the cases cited will emphasize the foregoing:

"The liberal rule, which to a very great extent promotes the administration of justice, doing away with the otherwise obstructive efficiency of technical unmeritorious and so unprejudicial defects, supplies in a pleading all essential matters not expressly stated when from the express statements they may reasonably be supposed to exist and to have been intended by the pleader to be included in such statements. . . . Reasonable doubts respecting the pleader's purpose as to matters which the adverse party is fairly entitled to have solved to enable him with due consideration to adopt

a course of action in respect thereto, must be presented to the court, for the purpose of obtaining enlightenment, by motion to make more definite and certain, not by challenging the pleading for insufficiency." *Milwaukee T. Co. v. Van Valkenburgh, supra.*

"The supreme test to be applied to a pleading as regards mere sufficiency is this: Will it reasonably admit of a construction which will sustain it, in the light of all facts alleged expressly or by reasonable inference, such inferable facts being regarded as alleged if their existence is reasonably suggested by the language used, and it being kept efficiently prominent in applying such test that reasonable doubts are to be resolved in favor of the pleading rather than against it where that can fairly be done?" *Milwaukee T. Co. v. Van Valkenburgh, supra.*

"If the facts stated, expressly and inferentially, upon any reasonable view, entitle respondent to any judicial relief in equity, . . . and regardless of mere indefiniteness of statement, it is sufficient on the challenge for insufficiency. . . . If this plain and valuable rule of the Code were always kept in mind by members of the profession much useless expenditure of time of courts and counsel, to the detriment of public and private interest, would be avoided." *Bannen v. Kindling,* 142 Wis. 613, 617, 126 N. W. 5.

"Matters of mixed law and fact, the ultimate of which is, in a broad sense, a fact, may be pleaded according to their legal effect. . . . Every fact necessary to entitle plaintiff to some judicial relief within the competency of the court to grant, which can reasonably be inferred from the language used, giving thereto, as a whole, the broadest meaning in favor of the pleading it will reasonably bear, must be considered as stated just as effectively as matters expressly and plainly alleged. In short, every reasonable intendment must be indulged in in favor of the pleading." *Schmidt v. Joint School Dist.* 146 Wis. 635, 639, 132 N. W. 583.

Thus it will be seen that the statements often met with in opinions that an allegation that an act was fraudulently done does not tender an issue of fact must be reconciled with the broad principle of the Code, by restricting it so as not to mis-

take matter of mixed law and fact, which may be pleaded as fact, nor mere indefiniteness for insufficiency, nor as involving a mere legal conclusion where the charge of fraudulently acting is made under such circumstances as to, necessarily or reasonably, raise an inference as to the nature of the act rendering it fraudulent. *McDonald v. Sullivan*, 135 Wis. 361, 116 N. W. 10, cited to our attention and relied upon by counsel, comes far short of supporting the idea that the term "fraudulent" or "fraudulently" under all circumstances involves a mere legal conclusion. There the court had under consideration a complaint depending upon a statutory remedy,—an act done with intent to defraud a prior or subsequent purchaser, under particular circumstances. It was held that a mere charge that the act was fraudulently done did not satisfy the statute for there was nothing in connection with use of the term to suggest that the party charged had the specific intent of the statute.

In *Crowley v. Hicks*, 98 Wis. 566, 74 N. W. 348, reliance was placed upon the text of Bliss on Code Pleading, § 211, *Cohn v. Goldman*, 76 N. Y. 286, and evident treatment of the term "fraudulently" under such circumstances as to render it a "meaningless epithet," not suggesting the existence of facts supporting it as a legal conclusion; moreover, not recognizing the very liberal rules which obtain under the Code. In the particular case, the term was referred to below as involving a "vague and unsatisfactory conclusion leaving it in uncertainty as to what his real purpose was." That is pregnant with the idea that, had the statement been made so as to indicate with reasonable clearness what the purpose of the pleader was, it would not, necessarily, have been regarded as a pure legal conclusion; moreover, it was somewhat overlooked that mere "vagueness and uncertainty" as to the purpose does not necessarily involve insufficiency, but is an infirmity to be reached by motion to make more definite and certain. In *Riley v. Riley*, 34 Wis. 372, it was held that

the charge of having "fraudulently taken advantage of the plaintiffs' incapacity" and thus "procured the challenged act to be done," "falsely and fraudulently representing said writing to be a mere matter of form, or will and testament," was insufficient for want of precision and a statement of the means whereby the false representations were successful. That case went a great way,—farther probably than could be regarded as consistent with the now firmly established test for the sufficiency of pleadings. That seems plain when it is seen that the allegations were condemned for want of "precision and point in their averment." As we have seen, "mere want of precision and point" in an averment does not go to sufficiency. Any mere indefiniteness and uncertainty may be reached by a motion to make more definite and certain. Now to require a definite, precise statement of the detail acts constituting the fraud would in some cases come pretty near to, if not more, require the pleading of evidence.

We must confess that there are expressions in opinions, particularly those of many years ago, tending to show that in charging fraud the specific acts relied upon as a basis for the charge should be definitely, expressly pleaded, but so far as they indicate an arbitrary universal rule, they must give way to the present state of the law as to liberality in construing pleadings and the competency to plead matter of mixed law and fact according to the legal effect,—whenever from the nature of the charge, its context, and the whole pleading, the underlying acts are, fairly or necessarily, inferable. That leaves the rule to stand so far as the substantial reason for it goes,—the right of the adverse party to know, reasonably, with what he is charged, and the competency of the court to pronounce the proper conclusion in case of the pleader's allegations being admitted,—but shorn of the technical requirement of definiteness which can readily be reached by a motion to make more definite and certain, or an examination under the statute to enable the adverse

party to plead.    The statutory right in the latter field affords
a party such ample facilities for obtaining particulars that to
adhere to the doctrine of technical accuracy and fulness of
statement which has support in some text-books and decisions
of courts not working under as liberal system as ours, and
perhaps in expressions in our own decisions, would afford
ample opportunity to take advantage of a mere technical de-
fect for the purpose of delay.    Rarely does a person tender
another an issue in court on the subject of whether that other
has wronged such person, without first demanding redress
without action, and under such circumstances as to acquaint
such other with the precise nature of the claim.    Therefore
when the ground of action is set forth in somewhat general
language, the defendant cannot well avoid knowing with rea-
sonable certainty with what he is charged, and courts should
so administer remedies as to prevent needless delay in bring-
ing the controversy to the point of judicial investigation.

Facing the foregoing, is there that fatal want of precision
in the complaint found by the trial court?    True, there is
the word "fraudulent" and the word "fraudulently," used
several times but in connection with other language explana-
tory thereof and giving point thereto as matter of fact.
"Said report and particularly the statement of liabilities of
said company to said defendant *Kipp,*" if understood as or
intended to be any account of the acts and accounts of said
*B. A. Kipp* as such trustee, or to determine in any manner
the amount of such purchase price then unpaid, or the
amount received by said defendant *B. A. Kipp* which should
be applied and credited thereon,—"was and is grossly false
and fraudulent;" "it fails to take into account and properly
credit the greater part of said sum of $20,000 and more re-
ceived by said defendant *B. A. Kipp* as aforesaid . . . and
was offered in evidence, as plaintiffs are informed and be-
lieve, to deceive said referee and defraud said plaintiffs;"
bristles, so to speak, with inferences of fact and is accom-

panied by allegations to the effect that the fraudulent intent was accomplished to appellants' damage in the sum of $20,000, more or less; and this: "said defendant *B. A. Kipp,* by his attorney, fraudulently induced said referee to make and file as one of his findings" a conclusion to the effect that the statement produced by respondent before the referee contained his accounts during the trustee period and that there being no objection thereto it was recommended for approval. Then there is the allegation that the referee's report was fraudulently presented to the court and it was fraudulently induced to confirm the same, in the face of appellants' protest that no accounting as trustee had occurred and demand for a re-reference and, to complete the history, the statement that, after the return of the cause from this court, in proceedings to settle *Mr. Kipp's* account as receiver, it was agreed that an order should be entered saving whatever rights appellants had to impeach defendant's accounts on the books of the B. A. Kipp Company, purporting to indicate the amount due him, and without prejudice to an accounting by him for the trustee period; and that the order should contain proper provisions in that regard and be approved by appellants' counsel before being signed by the court, but that, nevertheless, his attorney fraudulently procured an order to be entered without any such provision, which later the circuit court determined should be vacated and a proper order entered, but he died before that could be accomplished.

The lower court dealt with the features of the complaint mentioned without giving effect to the circumstances under which the words in question were used. For illustration: quoting from the circuit judge's opinion, "Plaintiffs allege that the report of the referee was false and fraudulent; that the defendant fraudulently induced the referee to make and file certain findings; that defendant by his counsel fraudulently procured and caused to be entered a judgment and an order, and that the defendant wrongfully and fraudulently

claims that a certain sum is due on the judgment." It is said that the particular words were used, all through, without specification of acts warranting the conclusion; whereas, as it seems to us, they are used in connection with expressly or inferentially stated circumstances forming fair ground therefor. To illustrate: note the circumstances under which the final order was obtained. The allegation that the referee's report was false and fraudulent occurred in connection with allegations to the effect that respondent, by his attorney, when called upon by the referee to account, presented a financial statement of the company, which, on its face, did not, specifically, show that it included the result of his handling of the property during the trustee period and which, in fact, omitted some $20,000 received by him out of the property; that it was so offered to deceive the referee into the belief that it contained a full statement of his handling of the property as trustee and to thus deceive appellants, and that the referee was thereby deceived and induced to make the prejudicially untrue finding. The allegation as to the entry of the judgment being fraudulently procured, occurs in connection with such a history of the transaction as to suggest, necessarily, that respondent, in the capacity of trustee, secured the entry of a judgment largely in excess of what it should have been, knowing that the court and referee had been deceived by his false and misleading statements into supposing that it contained a full disclosure of all his receipts as trustee, when, in fact, large sums, aggregating $20,000, more or less, had been omitted. The whole complaint shows an evident purpose to relate the story, and does it pretty clearly, of respondent having been trustee for appellants of the Kipp Company property for a considerable period; that when they called upon him to disclose how he had administered the same, he presented a statement, not in the form of a trustee account, but that of a corporation financial state-

ment and of such ambiguous character that it might be taken, and for the purpose of having it taken, as a trustee account, and that it was so taken to the knowledge of respondent, knowing that he had received some $20,000 not accounted for therein. The charge of having fraudulently induced the referee to make the false report and induced the court to approve of it, by necessary inference includes the charge that respondent falsely and with intent to cheat appellants, falsely expressly or impliedly represented the financial statement produced before the referee to show all his transactions as trustee and so represented the statement to the circuit court, or inferentially so represented, by failing to disclose its true character, when he knew of absence therefrom of any evidence of large sums of money with which he should be charged. The words "fraudulently induced the referee to make" the false finding and "fraudulently induced the circuit court to confirm" it, in connection with the whole story means what we have indicated and could not well be taken to mean anything else. So all the facts which the circuit court supposed to be absent were present, by express or implied statement and permissible pleading of facts according to their legal effect.

The court below quoted the essentials of such a cause of action as appellants were supposed to have attempted to state from *Stowell v. Eldred,* 26 Wis. 504, without observing the limitations and explanations in subsequent decisions which will be hereafter referred to. It would be well to tie closely to the later cases than to rely on this broad language of the early case:

"Chancery will relieve against a judgment at law on the ground of its being contrary to equity, when the defendant in the judgment was ignorant of the fact in question pending the suit, or it could not have been received as a defense, or when he was prevented from availing himself of the defense

by fraud or accident, or the acts of the opposite party unmixed with negligence or fault on his part."

Pointing to that rule the trial court found a fatal defect in the complaint, in that there was an absence of any statement of facts showing the requisite diligence to bring the matter complained of to the attention of the court and to show that they could have discovered the fraud in time to have availed themselves of its existence in the first action.    On this branch of the case it seems to have been overlooked that respondent occupied a fiduciary relation to appellants.    They had a right to rely upon his performing his duty prior to and upon the hearing before the referee.    He had no right to remain silent and challenge the proof, much less was he justified in placing a delusive statement before the referee and pretending, either expressly or impliedly, that it contained an exhibit of his transactions during the trustee period.    When the fiduciary position of respondent is considered and that appellants had used due care to employ attorneys whom they had reasonable ground to suppose were competent to protect their interests, the complaint shows such reasonable excuse for not presenting the matter complained of before the referee that a court of equity should not refuse to open its doors to prevent the success of a wicked scheme to cheat because of neglect at this point.

It was respondent who should have been the moving party as regards the accounting.    Appellants had a right to suppose that he would exhibit a true statement of his trustee transactions; that the referee would see that he did it and that appellants' attorneys would keep an efficient oversight in respect to the matter.    It may be that appellants' attorneys were too unsophisticated in the matter; even that they were negligent, or possibly incapable of coping with the particulars constituting the subtle deception said to have been practiced by respondent; but where a party uses ordinary care in the selection of attorneys to represent him in such

matters, equity may relieve him from the consequences of their infirmity or negligence. *Wis. M. & F. Ins. Co. Bank v. Mann,* 100 Wis. 596, 76 N. W. 777. It would be a strange weakness in our system of equity jurisdiction if a court could not or would not lend its aid to prevent a party from being greatly wronged by reason of his attorneys, either through negligence or otherwise, being imposed upon by the adverse party. So there was no fatal laches up to the time the referee's report was filed in the circuit court.

The trial court seems further to have overlooked the fact that, according to the complaint, confirmation of the referee's report was opposed upon the ground that respondent's pretended disclosure of his transactions during the trustee period did not make such disclosure at all; that only a misleading, deceptive statement was made with intent to deceive the referee and that, nevertheless, the report was confirmed and a re-reference refused because respondent's attorney persisted in urging upon the court the deceptive statement as containing a full disclosure of his trustee transactions, whereas his administration in that regard was wholly omitted, thereby keeping from the knowledge of the court the fact that he had received $20,000, more or less, and converted the same to his own use. The whole history of the case shows that the trial court was wrong in holding that there was delay in discovering the facts in time to make them available in the first case. The trouble was, according to the complaint, that the deception indulged in before the referee, was so persisted in, that the court, from first to last, was so imposed upon that appellants, with all the aid their attorneys afforded, were unable to avoid having the fraud of respondent in suppressing the real facts, prevail. This was not a case where appellants failed to discover the fraud until after the first case was closed to them, but one where it was believed and alleged to exist and there was such industry exercised to bring the matter efficiently to the attention of the

court as appellants were able to, relying upon their attorneys; but the latter, either through negligence or failure to compre-hend the situation, failed to successfully cope with the de-ception of respondent.

So on this branch of the case the decision below was reached under a misconception of the effect of the history of the litigation detailed in the complaint. On the whole, giv-ing the complaint the benefit of all reasonable inferences in appellants' favor, respondent designedly imposed upon the referee and the court until the first litigation was closed be-yond opportunity for relief therein to the impoverishment of appellants and the enrichment of himself to the extent of some $20,000, more or less, received by him during the trustee period, which should have been applied upon the pur-chase price of the property before the final judgment was rendered; and, in addition, that he later received during the receivership period, succeeding his receivership large sums which should have been applied upon the judgment.

True, the last matter, standing alone, would not afford ground for an independent action; not because of any want of power of the court to so entertain the matter, but because the practice having become so firmly settled that relief in such circumstances should be sought in the first action, that it is regarded as jurisdictional error to permit a second ac-tion therefor, either in the same or any other court. *Jack-son M. Co. v. Scott,* 130 Wis. 267, 110 N. W. 184; *Pleshek v. McDonell,* 130 Wis. 445, 110 N. W. 269. That being a mere matter of practice which has been given such dignity as to be regarded as jurisdictional, in the sense of inexcus-able use of judicial power, as distinguished from want of power, it does not go to the extent of rendering it improper to entertain such a matter where it is connected with events happening before the close of the first action furnishing good ground for an independent action in equity to restrain plaint-iff from enjoying the fruits of his unconscionable judgment.

In such a situation the court, having properly taken jurisdiction to deal with the proper major subject, may deal with the other matters as germane thereto and entertain the entire subject of dispute as to whether plaintiff should be restrained from enforcing his judgment.

There remains to be considered the question of whether a court of equity should exercise its jurisdiction in a case of this sort; one where it has once afforded the party complaining ample opportunity for redress and the time has gone by for any relief in the action instituted to that end, and where all the matters in controversy should have been forever set at rest.

There is no written law placing a limit upon the power of equity to remedy and redress wrongs, neither is there any want of power in that regard in the written law. It is the crowning merit of our system that, so far as power is concerned, it is as limitless as the capacity of man to wrong a fellow man. Courts may well proceed with great care in exercising their supreme authority outside of the field of ordinary judicial activity, but should never doubt or suggest want of power to deal with any situation where otherwise one person would be seriously injured by another in his person or property. The judicial arm of the people stands for its whole sovereign authority in that field, and so, in the very nature of things, must, in the final analysis, be limited only by the boundaries of justice and be taken as infallible as regards what is just under all the circumstances of any particular situation. Thus the maxim there is no wrong, above infractions of mere moral obligations, without a judicial remedy, is vindicated, even in a situation where wrong from one viewpoint has prevailed. Sound judicial policy requires that litigation shall have a course to a final determination. The end sought is peace with justice, and when courts have given, and litigants have had, the benefit of judicial instrumentalities throughout such a course, the finality, whether

right or wrong from a moral standpoint, should, in general, stand as an unimpeachable compact of peace between them and society. *Interest reipublicæ ut sit finis litium.* As also *Nemo debet bis vexari pro una et eadam causa.* Both maxims voice a policy firmly established in the law. Otherwise there would be no end to litigation, the mere mistakes, negligences, and falsehoods affecting the first result and persisting to the end of the course, would still leave the aggrieved party free to attack such result in a second action, and again in a third action,—action after action,—making litigation over a single controversy and its incidents, interminable. Obviously, that would be intolerable and courts have wrought out, as matter of unwritten law, the principle that, except in special circumstances of limited character where litigation has run its full ordinary course, there is, as matter of sound and necessary public policy, as forceful as any written law could be, that presumed infallibility in result which displaces the maxim "fraud vitiates everything" by estopping the party aggrieved from setting up fraud to avoid such result,—as it is said,—"closing the mouth on the one side and the ear on the other," creating a condition of lasting silence as to the matter closed by the judgment. Thus sometimes that may be right in law which is otherwise from a moral standpoint, since there is no wrong in legal contemplation as to that upon which the law's instrumentalities have set the seal of right. *Judicia sunt tanquam juris dicta, et pro veritate accipiuntur.*'

So in the further consideration of this case we must deal with the question of jurisdiction of the court to afford relief, but only in the sense of whether, by the mandate of the unwritten law, it should be exercised to grant relief under the circumstances disclosed. The distinction between that want of power which is substantive, so to speak,—excess of it would be usurpation and the result void regardless of the dignity of the particular tribunal,—and want of jurisdiction

which is a mere going beyond the boundaries which sound judicial policy has set for the exercise of power but the result, nevertheless, in the finality, is as binding as any judicial determination can be and falls within the field of the quoted maxim. *Harrigan v. Gilchrist,* 121 Wis. 127, 99 N. W. 909; *Cline v. Whitaker,* 144 Wis. 439, 129 N. W. 400; *Will of Rice,* 150 Wis. 401, 136 N. W. 956, 137 N. W. 778.

At an early day in the history of jurisprudence in this country, the court of highest dignity formulated a rule to mark the general limitations beyond which judicial remedies should not be afforded to question a final judgment after having passed beyond the reach of attention in the action where rendered. *Marine Ins. Co. v. Hodgson,* 7 Cranch, 332. True, there was no attempt to state precise limitations. That was impossible because every court would be free to make exceptions to fit the necessities of particular situations. The dominant principle was all the court sought to proclaim. That was stated in these words by Chief Justice MARSHALL:

"Any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law; or of which he might have availed himself at law, but was prevented by fraud or accident unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery."

In my judgment courts in general have kept pretty well within the principle so early laid down. It has been expanded somewhat here and there, in applying it to new situations, but the real gist of it, I think, has remained to this day substantially free from infractions. While bowing to the decision of the court in *Boring v. Ott,* 138 Wis. 260, 119 N. W. 865, I may be permitted to point to the discussion of this subject in my opinion in that case. I could not well add in writing for the court to what is there said as to the general limitations. Sometimes by circumscribing one's vision by

the boundaries of a precedent and tying thereto for a solution of the controversy in hand because of similarity, or supposed similarity of facts, the real governing principle is lost sight of. By following that course as matter of practice, confusion is most certain to be created and the scope of judicial activity become so fenced about by precedents that jurisdiction is liable to turn thereon instead of on the legitimate final test. The crowning purpose of courts is to effect justice. Their jurisdiction must be likewise extensive and their paramount duty is to open their doors freely instead of reluctantly whenever, in an orderly way, appealed to, and the written law or sound public policy has not sealed them upon the theory that the public welfare at this point is of greater dignity than private right and requires it.

The sound public policy referred to must, necessarily, be somewhat elastic in order to be adaptable to special circumstances which may often present new conditions. There is the respect which must be given to principle over precedent. So it is said, "There is no vitality in precedents; there is in rules. They are susceptible of expansion along every line necessary to reach new conditions. In all situations and under all circumstances, whether new or old, the principles of equity will point the way to justice where legal remedies are infirm. Precedents will be a constant guide, but never a bar. Where a new condition exists, and legal remedies are inadequate or none are afforded at all, the never-failing capacity of equity to adapt itself to all situations will be found equal to the case, extending old principles, if necessary, not adopting new ones, for that purpose." *McGowan v. Paul,* 141 Wis. 388, 396, 123 N. W. 253.

Recognizing the breadth of the judicial power as indicated, this court in *Stowell v. Eldred,* 26 Wis. 504, permitted an action to be maintained to prevent a party from enjoying the fruits of a judgment obtained by perjury. That, in my judgment, as maintained by me in *Boring v. Ott, supra,* was

contrary to precedents, old and new, though probably not outside of a broad conception of the principle. The court without referring to the initial case on the subject decided by the supreme court of the United States, thus formulated the rule for this state:

"Chancery will relieve against a judgment at law on the ground of its being contrary to equity, when the defendant in the judgment was ignorant of the fact in question pending the suit, or it could not have been received as a defense, or when he was prevented from availing himself of the defense by fraud or accident, or the acts of the opposite party unmixed with negligence or fault on his part."

As a precedent, *Stowell v. Eldred* justified *Boring v. Ott.* Evidently the court did not intend to announce a new principle,—at most only to state, broadly, an old one showing that the case in hand fell within it, and that was affirmed in *Boring v. Ott.* So it must be considered as settled in this state that fraud such as the commission of perjury in an action resulting in the wrongdoer obtaining a judgment, constitutes a wrong which, if the party aggrieved acts seasonably and was without inexcusable negligence in the action, equity will remedy. In that the court declined to follow, strictly, the doctrine of *U. S. v. Throckmorton,* 98 U. S. 61. There, for the first time, the precise nature of the fraud which will render a judgment open to attack in an independent action in equity was thus stated:

"The acts for which a court of equity will, on account of fraud, set aside or annul a judgment or decree between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral, to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered."

That was approved in *Uecker v. Thiedt,* 133 Wis. 148, 113 N. W. 447, and *Scheer v. Ulrich,* 133 Wis. 311, 113 N. W. 661. But such approval, so far as inconsistent with *Boring v. Ott,* must yield thereto. So it must be considered that

the broad rule as stated in *Stowell v. Eldred,* 26 Wis. 504, is the law of this forum, leaving administration thereof sufficiently elastic to meet the necessities of such serious situations as require a remedy and sufficiently restrictive as not to invade the wise public policy to, as generally as practicable, terminate litigation as to a single controversy. The precedents in our own court go only to the extent of holding that a judgment, secured by wilful perjury, may, under some circumstances, be relieved against in equity. But that must not be considered as establishing an exclusive situation as to where fraud intrinsic may be so dealt with. The real principle of the adjudications is that the power of equity to relieve against unconscionable judgments will not be strictly confined to such as are characterized by fraud extrinsic. Thus the rule of *Marine Ins. Co. v. Hodgson,* 7 Cranch, 332, is given a broad aspect, affording harmony with *Stowell v. Eldred, supra,* instead of following the restrictive exposition of the rule in *U. S. v. Throckmorton,* 98 U. S. 61.

So the vital question to be determined in such a case as this, is not, merely, whether the judgment was secured by fraud, extrinsic, without inexcusable fault of the aggrieved party, but was it secured by fraud without such fault, and are the circumstances so serious that the doors of equity ought not to open to afford relief?

Thus the early rule is not so closely fenced about by technical lines but that wise administration can enable the court to redress serious wrongs of the nature of that here complained of. Doubtless whether the facts require judicial interference, is largely matter of administration in a field where courts should exert their great power sparingly. In that respect, probably, fraud extrinsic would appeal successfully for such interference where fraud intrinsic would not, but the mere nature of the fraud in that regard would not be an arbitrary test.

Can there be any fair doubt that the facts of this case ap-

peal as strongly for a judicial remedy as one where a judgment is obtained by perjury? It is not a case where one may by mere silence permit a judgment to go in his favor, which is unjust. In ordinary situations one may, legally if not morally, keep silent and profit by his adversary's ignorance. That is neither fraud, intrinsic, as in case of perjury, nor fraud, extrinsic, within the *Throckmorton* rule. But where there is a solemn duty to speak, independently of coercion, and in judicial controversy as well, whether asked to speak or not, and there is a failure to speak, resulting in the enrichment of the wrongdoer and the impoverishment of the one to whom that duty is owing, there is a fraud of most serious nature and, in a sense, both intrinsic and extrinsic. That view was taken of the early rule and as a modification, if need be, of the *Throckmorton* exposition of it in *Maddox v. Apperson,* 14 Lea (82 Tenn.) 596. The court there said that if the term "extrinsic fraud" as distinguished from "intrinsic fraud" would bar relief where a judgment is obtained by suppressing evidence which the prevailing party is bound to disclose by reason of his relation to the adverse party, as in case of the existence of fiduciary relations, the court would not go that far.

Here the respondent, as before suggested, owed to appellants the active duty, independently of any litigation, to make a full disclosure of his transactions as trustee. That duty he owed, in a high degree, in the litigation, and also he owed the duty of making such disclosure to the court and to its referee. According to the complaint he not only failed in this respect, preventing thereby appellants from having the benefit thereof in the litigation, but palmed off on all parties a spurious deceptive paper as a disclosure and thus secured the judgment complained of. If those facts can be established, they will make a case fairly within the *Throckmorton* rule and the broader rule in *Marine Ins. Co. v. Hodgson.* Chief Justice MARSHALL there guarded the doctrine

proclaimed by prefacing with these words: "Without attempting to draw any precise line to which courts of equity will advance and which they cannot pass in restraining parties from availing themselves of judgments at law, it may be safely said," etc., using the language before quoted. This court, in the *Stowell Case,* asserted that principle, vindicating the wisdom of the early declination to "draw any precise line to which equity will advance and which the court cannot pass" in cases of this sort, and again vindicated it in *Boring v. Ott.*

From the broad lines of the rule, as approved in the latter case, who can place any precise limitations upon it? As we have seen, the effort elsewhere to confine it, strictly, to matters "extrinsic" this court has deliberately refused to follow, preferring the liberty to do justice, found within the broad lines of its early declaration. However, there is little doubt but that, if it were followed, it would include the situation in hand because of the particular relations of respondent to appellants. In any event, this court would rather be compelled to retrace its steps than to advance in order to hold that the situation here is up against a bar which it either cannot or will not pass in order to afford appellants an opportunity to obtain redress, if they are able to satisfactorily establish what they claim to be the facts. Obviously, they will find, in the end, this litigation to be useless to them, unless they can establish with more than mere reasonable certainty the facts upon which they rely,—prove them with that degree denominated "clear and satisfactory" which should be regarded with considerable emphasis in a case of this sort and up to the very border line, perhaps, of where no reasonable doubt remains.

*By the Court.*—The order appealed from is reversed, and the cause is remanded for further proceedings according to law.

TIMLIN, J. (*concurring*). I concur in the decision reversing the order of the circuit court, which order sustained a demurrer to the complaint, and my concurrence rests upon the following grounds:

In *Kipp v. Laun,* 146 Wis. 591, 131 N. W. 418, this court affirmed a judgment of the circuit court which among other things provided for a reference and an accounting in this litigation. In the complaint before us now it is sufficiently averred that the respondent in making such account as a fiduciary withheld and concealed evidence peculiarly within his knowledge relative to sums of money realized by him in the operation of the business and property purchased from him by *Laun et al.* and which he received while the litigation to enforce the contract was pending. That when this was brought to the attention of the circuit court, upon the hearing of a motion after judgment in said cause, it was shown to the circuit court that a further hearing in the cause and a further accounting would be necessary on account of such omitted items which would make a difference of about $20,000 in favor of the appellants. The circuit court, relying upon arguments of respondent's counsel to that effect, held it had no power in that action to modify that portion of the decree confirming the referee's report, but suggested an independent action by *Laun et al.* against *Kipp* for relief. Counsel for the respective parties litigant then stipulated in open court that the account of *Mr. Kipp* as receiver (he having been appointed receiver *ad interim*) might be allowed and the receiver discharged without in any manner approving said account upon the point hereinbefore mentioned and without prejudice to an accounting as to moneys received by said *Kipp* prior to his appointment as receiver, and directed that the order to be drawn should be submitted to counsel for *Laun et al.* and should contain a provision upon this subject satisfactory to them. The counsel for *Kipp* thereafter,

fraudulently and without submitting the same to the counsel for *Laun et al.,* presented to the court and had signed an order not containing any such reservation, and upon this coming to the knowledge of the circuit judge he declared that such order should be vacated and a proper order drawn pursuant to the former stipulation and direction. But the circuit judge died before this direction was carried into effect by proper judicial action. Upon such facts, coupled with proper averments to entitle appellants to an accounting, the complaint states a good cause of action within the rule of *U. S. v. Throckmorton,* 98 U. S. 61; *Marshall v. Holmes,* 141 U. S. 589, 12 Sup. Ct. 62; *Boring v. Ott,* 138 Wis. 260, 119 N. W. 865; *Uecker v. Thiedt,* 133 Wis. 148, 113 N. W. 447; and *Stowell v. Eldred,* 26 Wis. 504, either or all of them.