FIRST NATIONAL EXCHANGE BANK, Respondent, vs. HAR-
VEY, Appellant.

*December 15, 1921—January 10, 1922.*

*Judgment: Equitable relief to restrain enforcement: Laches.*

1. A court of equity will relieve from a judgment obtained
   through perjury where the defendant comes into court with
   clean hands and has been guilty of no laches; but it demands a
   very high degree of proof before it will restrain the enforce-
   ment of a judgment upon that ground.
2. Equity will not afford relief to a party that was passive and in-
   different at a time when he might have secured his rights in
   a court of law. ·
3. In an action in this state to enforce judgments rendered in the
   courts of Ohio (based upon promissory notes), defendant put
   in a counterclaim for equitable relief on the ground that the
   judgments were procured by perjury, which contained no
   allegation that he appeared in the original action in any
   manner, that he introduced any defense whatever, that he
   used due diligence or did anything to challenge the *bona fides*
   of the plaintiff's title to the notes, or to put it to its proof
   upon the question of whether it was a holder in due course.
   *Held,* defendant was guilty of laches, and a demurrer to his
   counterclaim was properly sustained.

APPEAL from an order of the circuit court for Milwaukee
county: E. T. FAIRCHILD, Circuit Judge. *Affirmed.*

The appeal is from an order sustaining a demurrer to de-
fendant's counterclaim.

This action is brought to recover on two judgments, ag-
gregating about $4,400, rendered against one J. E. Latimer
and the defendant, *Harvey,* in the courts of Ohio. The de-
fendant counterclaimed for equitable relief enjoining the
enforcement of the judgments, for the reason that the same
were procured by fraud, conspiracy, and perjury. The
counterclaim alleges, among other things, that the judg-
ments sued upon were based on certain promissory notes
which grew out of the following transaction: On or about
the 1st day of October, 1913, one J. E. Latimer of Cleveland,
Ohio, had a leasehold interest in certain property in that

city, and by the terms of which, among other things, he was required to erect thereon a building at a cost of not less than $50,000. There was a provision in the lease that it should not be assigned without the consent of the lessor. On or about said date defendant and said Latimer entered into an agreement whereby the said Latimer agreed to procure the written consent of the lessor to an assignment of said lease to defendant and whereby the defendant agreed to pay to said Latimer certain sums of money expended by him for rental, taxes, premium on bond given by Latimer to the lessor as security for the performance of the lease, etc., pursuant to which agreement, and before the assignment had been executed or the consent of the lessor to such assignment had been procured, the defendant paid to the said Latimer the sum of $1,000 and executed his promissory notes for the balance; that when said notes became due said Latimer had not procured the consent of the lessor to the assignment of said lease nor had the assignment been executed, and the notes were renewed upon the promise of the said Latimer to comply with the terms and conditions of the said agreement and to procure the consent of the lessor to the assignment of said lease and to assign the same; that said Latimer never did assign said lease nor procure the consent of the lessor to said assignment, and that he failed in every respect to carry out his agreement in that behalf, and that the consideration for said promissory notes entirely failed; that before the aforesaid notes became due, the said Latimer, knowing that the consideration for said notes wholly failed, unlawfully combined and conspired with one N. R. Wildman, a broker in real estate and commercial paper then residing and doing business in Cleveland, to have said notes transferred in form to some third person, either before or after maturity thereof, and to have said transferee falsely claim and assert that the notes had been acquired by said transferee in good faith, for a valuable consideration, without knowledge of the failure of consideration for which said

notes were given and without knowledge of any defense thereto, and to have such transferee falsely claim and falsely swear in court in such action that said two notes were acquired by him in due course; that thereafter and before the commencement of the actions which resulted in the judgments mentioned in the complaint, the said J. E. Latimer and N. R. Wildman, in pursuance of said conspiracy, induced the plaintiff herein, as defendant is informed and believes, to enter into said unlawful combination with full knowledge that the consideration of said notes had failed, and the purposes and objects of the conspiracy entered into between Latimer and Wildman and the said plaintiff did, as defendant is informed and believes, enter into said conspiracy before the commencement of either of the actions which resulted in the judgment mentioned in the complaint herein, and in pursuance thereof the said plaintiff agreed·to have the said two notes transferred to it either before or after maturity thereof, under the conditions so unlawfully agreed upon, and as such transferee to bring action upon said notes and obtain judgments thereon by the means so agreed upon between said Latimer and Wildman; that the plaintiff accepted the transfer of said two notes either before or after maturity thereof, and to *defendant's own knowledge* said plaintiff acquired both of said notes with full knowledge and due notice that the consideration thereof had wholly failed, *and, as defendant is informed and believes,* without paying a valuable consideration therefor; that it brought action upon said notes in pursuance of said conspiracy and through its officers, agents, or attorneys, by falsely swearing in court, as *defendant is informed and believes,* that it was a *bona fide* owner and holder of said notes; that it acquired the same before maturity, in due course, etc., obtained the judgments, etc.; that at the time of the trial of said actions defendant had no knowledge of the conspiracy.

It is further alleged that at the time of the trial of the original actions defendant had no knowledge or information

of the conspiracy or the purposes or objects thereof, and had no knowledge or information as to whether said notes were acquired in good faith before maturity or for a valuable consideration, but that all such knowledge and information has been derived by the defendant since the trials of said actions and since the rendering and entry of said judgments, "for which reason this defendant was unable to interpose as a defense to the actions which resulted in said judgments the facts herein alleged and set forth." There is no allegation in the counterclaim that the defendant in any manner appeared in said actions, or that he made any effort to use any diligence to ascertain whether the plaintiff was the holder in due course of the notes upon which the judgments were rendered.

The plaintiff demurred to the counterclaim, which demurrer was sustained, and from the order sustaining the demurrer defendant, *Harvey*, brings this appeal.

The cause was submitted for the appellant on the brief of *Curtis & Mock* of Milwaukee, and for the respondent on that of *Bottum, Hudnall, Lecher & McNamara* of Milwaukee.

OWEN, J.    The defendant seeks to invoke the aid of a court of equity to prevent the enforcement of the judgments sued upon on the ground that they were procured by means of perjury. True, fraud and conspiracy is also alleged, but it does not appear that such fraud and conspiracy in any manner restrained the defendant from interposing a defense to the original causes of action or influenced his conduct with reference thereto in any way. He was not deceived or misled by the alleged conspiracy, and if the court was imposed upon in any manner it was by virtue of the perjury which the defendant alleges, upon information and belief, occurred at the trial. We treat the counterclaim, therefore, as one asking for equitable relief on the ground that the judgments were obtained through perjury. That

this court will relieve from a judgment so obtained, where the defendant comes into court with clean hands and has been guilty of no laches, is established by *Stowell v. Eldred,* 26 Wis. 504; *Boring v. Ott,* 138 Wis. 260, 119 N. W. 865; and *Laun v. Kipp,* 155 Wis. 347, 145 N. W. 183. We deem it unnecessary to consider whether the counterclaim sets forth a good cause of action under the doctrine of those cases, and pause, in passing to a discussion of the decisive question in the case, only to remark that a court of equity demands a very high degree of proof before it will restrain the enforcement of a judgment upon the ground that it was obtained by perjury, and the character of the allegations of this counterclaim affords little assurance that that high degree of proof is at hand. It will be noticed that the allegations of perjury are made upon information and belief and that no individual is named as having committed perjury in the procuring of the judgments sued upon. While it is quite probable that the defendant could make the allegation in no other form, it is not unreasonable to suppose that his then information pointed to some individual upon whose perjured testimony the judgments were procured. If his investigations and information had not gone to that extent at the time of the preparation of his pleading, there is little reason to believe that he could bring to the support of the allegations of his counterclaim that high degree of proof essential for the granting of the relief prayed for. Furthermore, it seems quite probable that the judgments were rendered upon the mere production of the notes and in the absence of any sworn testimony; all of which is said not for the purpose of demonstrating that the counterclaim is vulnerable upon demurrer, but to suggest that the general tone thereof does not give assurance of much probability that plaintiff could prove a cause of action even though he may have technically pleaded one.

Passing to the decisive question in the case, we hold that the demurrer must be sustained, on the ground that the de-

fendant is guilty of laches. The counterclaim contains no allegation that the defendant interposed any defense in the original action resulting in the judgments sued upon. The counterclaim is silent as to whether he permitted the judgments to go against him by default, but such we deem to be the plain inference from the pleading. We have, then, a case where the defendant was sued upon promissory notes the consideration for which had utterly failed. He made no attempt to defend the action upon such ground. This fact is set forth in the counterclaim and sought to be excused on the ground that he did not know at that time that the plaintiff was not a holder in due course. This is not the conduct of one who is diligent in the protection of his legal rights. The most liberal construction that can be given to the allegations of the counterclaim is that he did not know that the plaintiff was a holder in due course. It was incumbent upon him to challenge that fact, to demand affirmative proof thereof, and to avail himself of his right of cross-examination. But there is no allegation in the counterclaim that he appeared in the action in any manner; that he interposed any defense whatever, or that he did anything to challenge the *bona fides* of the plaintiff's title to the notes or to put it to its proof upon the question of whether it was a holder in due course. There is no allegation that he made any attempt to ascertain what the fact was in that respect, and there is a lack of any showing that any diligence whatever was used to ascertain whether the plaintiff was in fact a holder in due course. If the pleading were used as the basis of a motion for a new trial on the ground of newly-discovered evidence, the motion would have to be denied under our rules of practice because of a lack of any showing upon the question of due diligence. It is a general principle of equity that it will not interfere to afford relief where legal redress is available, and in order for the defendant to have any standing in a court of equity to secure the relief sought by his counterclaim he must show that he made use of and ex-

hausted the opportunities available to him in the original action. This he has failed to do, and as he was passive and indifferent at a time when he might have secured his rights in a court of law, equity will not now afford him relief.

*By the Court.*—The order appealed from is affirmed.