## ORO FINO AND MORNING STAR MINING COMPANY, RESPONDENTS, v. PATRICK J. CULLEN ET AL., APPELLANTS.

PRACTICE.—For the sake of harmonizing the practice in legal and equitable cases, and to give effect to the spirit of our code, we incline to the opinion that the practice is, to proceed against a decree in order to annul or set it aside in the same manner as against a judgment entered in a court of law.

IDEM—DISSOLVING INJUNCTION.—A party denying the allegations of a bill in equity, and desiring to procure the dissolution of an injunction on the ground of having denied the equities of such bill, must controvert directly every material allegation of such bill; he must not undertake to set up new facts, must not confess and avoid. It must simply be a plain, direct, unequivocal denial.

IDEM.—When the whole equity of the complaint is denied by the answer, the defendant is entitled to a dissolution of the injunction *pendente lite* until the plaintiff's title is established by proper evidence on the hearing of the cause. But to have this effect the denial of such equities must be full and specific, and must cover the whole ground.

IDEM.—If facts are admitted which qualify a general denial; if the denials be evasively made; or if, on examination of the circumstances, the court deem that the facts warrant the continuance of the injunction notwithstanding a formal denial may have been made, the rule will not be applied.

PARTIES—AMENDING BY ADDING PARTIES.—The district court has the right at any time to call in other parties, or to cause the proceedings to be amended in that particular by striking out or adding the names of any parties, which may be necessary to accomplish the ends of justice and secure the interests of all.

APPEAL from the third judicial district, Owyhee county.

*Ed. Nugent*, for the appellants:

1. The rule that questions must be disposed of in the order in which they arise applies in this instance to proceed-

8

ings *in limine.* The proposition that a judge can not tres-
pass upon the province of a court and pass upon a demur-
rer is not disputed by the appellants, but it is contended
that no result can prevent a collateral proceeding being gov-
erned by the rules to which it owes its origin. As in the
former equity practice, so under the statute a demurrer is a
thing unknown, and can not be regarded upon an applica-
tion for a dissolution of an injunction. If granted before an-
swer filed, the defendant, when moving to dissolve, can pro-
ceed upon bill, answer, and affidavits, or upon either of
them, and is precluded from introducing anything in the na-
ture of a dilatory plea. The demurrer is not only excluded,
but is useless, since, whether demurred to or not, the bill
must show sufficient grounds for relief, and this notwith-
standing the fact that an answer has been filed. It is urged
by appellants that the injunction should have been dis-
solved for the following reasons: 1. An answer was on file
at the time, in which was denied specifically all the material
allegations of the bill; 2. The bill itself made no sufficient
showing for an injunction; 3. The proceedings enjoined
was the execution of a decree obtained in the same suit.

*Martin & Johnson,* for the respondents:

1. No motion to dissolve an injunction can be sustained
upon a demurrer, which admits all the facts, unless there is
an utter want of a cause of action set out.

2. If there should be some defect in the complaint, but
if the court can see that a good cause of action did exist,
and that it was a proper one for injunction, the court would
sustain the injunction and permit amendments.

3. The motion being made on the demurrer, it is the only
paper which can, under our practice, be considered, be-
cause one party can not be permitted to say at the same
moment the complaint is true and is not true, and assign to
the court two utterly repugnant reasons for its action. The
law requires issues of law to be first determined. The course
appellants propose produces a singular phenomenon at law;
they would have the benefit of the demurrer and we not.

4. The answer, if considered, is insufficient and inconsist-

ent.   The liens and the judgment upon them were illegal and fraudulently taken, for the purpose of charging one portion of joint property and by the sale of that portion relieve the other co-debtors.

5. The enforcement of the lien against the complainants would be a violation of an equitable rule that where two persons have each a security upon a single fund, and one of them has security upon another fund, he will be restrained from enforcing his security out of the fund which the two securities are on to the prejudice of the other creditor.   (Authorities referred to by respondents' counsel as to the effect of a demurrer: 1 Van Sant. Pl. 649, 651, 668; Van Sant. Prec., note, 371; Abb. Prec., note, 41; Practice Act of Idaho territory, sec. 156; Story Equity Pl. 452; 3 Cal. 323; 8 Id. 397; Barbour on Parties, 62; *Cutler* v. *Wright,* 22 N. Y. 482.   As to pleadings and answer: Van Sant. Pl. 418; *Hensley* v. *Parton,* 14 Cal. 509; *Blackman* v. *Vallejo,* 15 Id. 644; *Curtis* v. *Richards,* 9 Id. 38; *Burke* v. *Table Mountain Co.,* 12 Id. 407; *Baker* v. *Baker,* 13 Id. 98; *Verzan* v. *McGregor,* 23 Id. 339; *Nelson* v. *Murray,* Id. 338; *Brown* v. *Scott,* 25 Id. 196; *People* v. *Supervisors San Francisco,* 27 Id. 674; *Landers* v. *Bolton,* 26 Id. 416.)

McBRIDE, C. J., delivered the opinion of the court, CUMMINS, J., concurring.

The facts in this case, as shown by the pleadings, are as follows: More & Fogus, the grantors of the plaintiff in this suit, were the owners of an undivided five hundred and sixty-two and one half feet of one thousand feet in the Oro Fino quartz lode in Owyhee county, Idaho territory, and as such were in the control and management of the mine.   The defendants in this suit, claiming to be workmen and contractors under the mechanic's lien law, had filed their liens, amounting to over twenty-two thousand dollars, upon the improvements and works of More & Fogus in and upon said mine. On the eighth day of October, 1866, and after a suit for foreclosure of these liens had been commenced by the defendants in the present suit, More & Fogus, having failed in business, made a transfer of their interest in this mine, together with

other property, to the plaintiff in this action.    It appears that the plaintiff in this suit, without asking to be made defendant in the suit upon the mechanics' liens, had employed counsel to defend that action under some arrangement with More & Fogus to that effect, but upon the day set for hearing, the counsel thus engaged were dismissed by More & Fogus, who were then only nominal defendants, and withdrawing the defense which had been interposed by this plaintiff, the parties took judgment for the enforcement of their liens, and a decree ordering the sale of the improvements in the Oro Fino mine was duly entered.    Shortly after the defendants took out an execution for the sale, and the sheriff was proceeding thereunder, when the plaintiff brought the present action to restrain the sale, to have the liens set aside and annulled, and that the defendants be enjoined from the benefits of said decree of forclosure and sale. ·

As the ground of this relief the plaintiff claims that it is the owner of all the right and title of the said More & Fogus, to wit, the owner of five hundred and sixty-two and one half feet of one thousand feet of the Oro Fino mine by deed of transfer of October 8, 1866; that by an agreement with its grantors, the suit being at the time pending, the plaintiff was to employ counsel to attend to the trial of the rights of the parties, and that the plaintiff did so employ counsel; that on the day fixed for the hearing the said More & Fogus came into court, dismissed the counsel so 'employed by plaintiff, substituted other counsel by whom no defense was made, and judgment was taken upon confession against said More & Fogus, and a decree entered thereon ordering the enforcement of the liens.

The plaintiff alleges that this decree was obtained in fraud of its rights by collusion between More & Fogus, who were at the time of its rendition only nominal defendants, and the defendants in this action, and for the purpose of incumbering and charging the payments of these claims upon property not subject to any such liens.    The plaintiff alleges that the work which was the basis of the liens was done as common laborers, and not as contractors; that it

was done upon the whole mine of one thousand feet, and not the interest of said More & Fogus; and the said liens, upon which the said decree of foreclosure was based, were utterly invalid and insufficient. These are the substantial facts upon which the plaintiff seeks relief, and on this showing an injunction was issued by the district judge. To this complaint a demurrer and answer were filed, and afterwards an application·was made to the district judge to dissolve the injunction upon the ground that the answer denied all the equities of the bill. The judge below refused· the motion on the ground: 1. That the demurrer being an admission of the truth of the complaint, the defendants could not be allowed to use their answer to controvert its allegations; and, 2. That the facts stated in the complaint being admitted, showed a *prima facie* right to the relief prayed for.

As the reasons for that decision are purely technical and involve only a question of practice, in the absence of a full bench we pass them by, and propose to dispose of this motion on its merits. Before considering the main question, however, it will be proper to notice that part of the argument of the defendants which insisted that as the original suit was a proceeding in equity, no injunction would lie to restrain the execution of the decree of foreclosure and sale, and a somewhat broad challenge was made for the production of any case where a court of equity had enjoined proceedings under a decree entered in its own forum. This notion is in one sense correct. We find no instance where a court of chancery has restrained its proceedings, and for the simple reason that under the old equity system everything was directly under the control of the chancellor, and he enforced his decrees by the processes of orders and attachments. Counsel would hardly contend that a decree, once entered in a court of equity, must be executed and was irrevocable, although it bound and concluded the rights of parties who were shown to be strangers to the proceedings. The remedy in the old practice was to move to open and set aside the decree. (See Story Equity Pl., p. 472, sec. 426.) Or, if it was pending the action, to move for a stay

of proceedings. A motion for an injunction was not necessary, because the proceedings would be stayed by an order from the chancellor. But as the statute provides under the code that decrees shall be enforced by the writ of execution the same as a judgment at law, it can, for the purpose of remedial proceedings, be treated in the same manner as a judgment rendered by a court of law. Or if, in closer analogy to the ancient practice, we adopt the rule of opening the decree and staying proceedings by an order issued on a showing, we reach the same results. For the sake of harmonizing the practice in legal and equitable cases, and to give effect to the spirit of our code, we incline to the opinion that the better practice is to proceed against a decree in order to annul or set it aside in the same manner as against a judgment rendered in a court of law. It will be seen that the doctrine here laid down does not conflict with the decision of Justice Harris referred to by counsel. (3 N. Y. Code Rep. 86.) That was a case where an injunction was prayed for pending the suit, not after decree. The court held that the motion to stay proceedings was the proper remedy. And the reason assigned was that the injunction could not be necessary, because, under the code, the defendant had a right to interpose his equitable defense to an action at law.

We conclude, therefore, that under the code, when decrees in equity and judgments at law are enforced by the same process, viz., that of execution, the same remedies apply in cases when it is sought to annul and set them aside. The other objection, that the bill itself is an insufficient showing for an injunction, we pass by, because such questions are properly raised on demurrer only, and not before us. How far a judge should go in determining the legal sufficiency of a bill before an injunction, we will not undertake to define. A *prima facie* showing certainly should be made, but what this is we will not now stop to inquire. To go into the case as suggested in the argument would require the same scrutiny that it would to pass upon the demurrer, and that we think clearly beyond the province of the judge in such a case. The defendants insist that

their answer denies all the equities stated in the bill, and upon the settled rule in such cases the injunction should be dissolved.

This rule, however, being founded upon the old idea that when two parties in a suit affirmed with equal positiveness that an opposite state of facts existed, the chancellor must offset the one against the other, has always been acted upon with strictness. The party denying must controvert directly every material allegation of the bill. He must not undertake to set up new facts—must not confess and avoid. It must simply be a plain, direct, unequivocal denial. The rule is well stated in Whittaker's Practice, vol. 1, p. 479: "When the whole equity of the complaint is denied by the answer, the defendant is entitled to a dissolution of the injunction, *pendente lite*, until the plaintiff's title is established by proper evidence on the hearing of the case. But to have this effect the denial of such equities must be full and specific, and must cover the whole ground. If facts are admitted which qualify a general denial; if the denial be evasively made; or if, on examination of the circumstances, the court deem that the facts warrant the continuance of the injunction, notwithstanding a formal denial may have been made, the rule will not be applied." (See Whittaker, *supra*, and other authorities there cited.)

We will not take the time to go into the answer in this case and show that it is insufficient to support the motion. It may suffice to say that its denials are in some of the most material matters merely formal and technical; that it is in some material portions evasive and special, and is a better specimen of ingenious denial than ingenuous pleading. The defendants deny that the plaintiff has any interest in the property on which their liens are foreclosed, and yet admit that the parties against whom they foreclosed those liens had given plaintiff a deed prior to the decree of sale. They deny that the plaintiff, with the consent of More & Fogus, ever employed counsel to defend the suit upon which decree was entered, and yet admit that attorneys were employed and did appear, and were dismissed by More & Fogus, and other attorneys substituted. They deny

Points decided.

that the work and labor upon which their mechanics' liens were based were performed on the whole of the one thousand feet belonging to the mine, and admit that More & Fogus owned only five hundred and sixty-two and a half feet undivided of the mine, which renders the denial a solecism, because it is a physical impossibility to work on the interest of More & Fogus alone. They deny that they were "not contractors," as alleged in the complaint, but do not state in affirmative form—which would have been the proper way—what their "contract" was. We repeat, such denials as those referred to above can not be treated as "full, direct, and specific." They are, in the language of the authority quoted, "evasively made," and do not entitle the party to the favorable action which he seeks.

There was some reference made to the question of the proper parties, but that is more properly a matter to be addressed to the court below in the progress of the cause. The court has the right at any time to call in other parties or to cause the proceedings to be amended in that particular by striking out or adding the names of any parties which may be necessary to accomplish the ends of justice and secure the interests of all.

The judgment will be that the order of the judge below denying the motion to dissolve the injunction be affirmed, and that the case be remanded with an order to proceed with the cause.

Order affirmed. _____