WASHBURN LAND COMPANY, Appellant, vs. WHITE RIVER LUMBER COMPANY, Respondent.

*January 16—February 13, 1917.*

*Judgment: Equitable relief against: Action to restrain enforcement: Grounds: Mistake and accident: Pleading: Counterclaim: Tax title to land.*

1. The abolition of the ancient bill of review in equity did not abrogate any of the remedial rights formerly enforced thereby.
2. When the methods expressly provided in the statutes for obtaining relief against a judgment are not available, equitable relief against an unjust and unconscionable judgment by way of restraining the party who seeks to enforce it may be invoked under the Code procedure in all appropriate cases.
3. The foregoing rule is applicable to judgments in all civil actions whether the rights of the parties determined by such judgments arose at law or in equity.
4. Such equitable relief against an unconscionable judgment may be invoked not only in cases of fraud but also upon the grounds of accident and mistake.
5. Thus, allegations to the effect that a tax upon land was in fact paid in 1888, but by mistake was returned as delinquent and the land sold therefor and a tax deed thereafter wrongfully issued; that the owner of the land at the time said tax was paid and a grantee of such owner continued in possession of the land and paid the taxes thereon without knowledge of any adverse claim until 1912; that upon discovery of the existence of the tax deed an action to quiet title was brought, but, by reason of the mistake of the taxing officers above stated and the accidental loss of the tax receipt by the former owner, without fault or negligence on the part of the plaintiff in that action the facts could not be proved and judgment was consequently entered quieting the title in the tax-title claimant; and that the tax receipt has since been found—state facts upon which equitable relief may be granted against said judgment.
6. Such facts were properly pleadable as a counterclaim, under sec. 2656, Stats., in an action for trespass brought by the tax-title claimant against the plaintiff in the former action.

APPEAL from an order of the circuit court for Bayfield county: G. N. RISJORD, Circuit Judge. *Affirmed.*

This is an action to recover damages for a trespass which plaintiff alleges the defendant committed upon forty acres of its land by the cutting of timber thereon. The land is described as the southwest quarter of the southwest quarter of section 22, in township 46 north, of range 7 west, in Bayfield county, Wisconsin. The trespass is alleged to have occurred in June, 1912, and at different times thereafter.

The complaint alleges that the plaintiff is the owner of the land in question and that the defendant wrongfully entered such land and without authority cut and removed therefrom a number of pine and other trees of the value of $18,000 and converted such logs into lumber of the value of $45,000. Plaintiff therefore demands judgment for the sum of $45,000.

In the answer of defendant it is alleged that the defendant is the owner of the land in question and that the logs and lumber were only of the value of $15,000. The defendant alleges by way of counterclaim in the action that it is a corporation of this state; that it acquired title to the premises in question by warranty deed on September 4, 1888, executed by John J. Rupp, Moore Kerr, Addison P. Brewer, and Fred B. Brewer, and that such parties had owned the fee title thereof for more than two years prior thereto; that such warranty deed was recorded in the register of deeds' office of Bayfield county on September 28, 1888; that one John W. Humbird owned and controlled the defendant corporation and so continued until June, 1905, when the present owners of the company acquired all the corporate stock, and that the present owners before the last mentioned date had no interest in or connection with said company; that defendant has, since September, 1888, in good faith claimed to own these premises and paid the annual taxes levied thereon up to the year 1913, and cut timber therefrom in 1911 and 1912 in the belief that defendant was the sole owner in fee of the land and without knowledge or information tending to put defendant

·upon inquiry as to any claim of title or interest in the premises by any other person until the month of September, 1912, when it discovered that a tax deed dated May 19, 1891, had been issued to A. C. Probert and that such deed had been recorded the same day; that such deed issued on the tax sale of 1888 for the sum of $4.39 delinquent taxes, as reported by the county treasurer. Defendant at this time also learned that a quitclaim deed from A. C. Probert and wife to the plaintiff, dated August 10, 1895, had been executed and recorded; that this was the first knowledge defendant's officers, agents, and servants had of such deeds. The defendant thereupon made a thorough and exhaustive investigation and search for tax receipts showing payment of taxes upon these premises and made inquiry of its grantors respecting the payment of such delinquent tax, who also made a careful and exhaustive search for tax receipts showing payment of such tax, but no receipt including the delinquent tax could be found, although entries were found in the land book of defendant's grantors indicating that this tax had been paid by J. D. Crittenden of Bayfield, Wisconsin. It appears that Crittenden had died many years before. Defendant also alleges that it made an investigation of the records in the office of the county treasurer of Bayfield county, but found no entries tending to show such tax had been paid. On December 31, 1912, the defendant brought an action against this plaintiff to cancel the tax deed and clear the title to the premises, and this plaintiff as defendant in that action claimed title to these premises under the tax deed issued to A. C. Probert. This defendant tendered the prosecution of such action to its grantors of these premises, who again made a search for a tax receipt showing payment of the tax for 1887, but wholly failed to find such receipt. It is alleged that the county treasurer of Bayfield county found a stub indicating payment by defendant's grantors of the tax on the southwest quarter of the southwest quarter of section 20, town 46, but found no such entries in-

cluding the southwest quarter of the southwest quarter of section 22, town 46. The defendant's officers and agents were led to believe by such records that the original tax receipt of defendant's grantors would correspond to such stub referring to such section 20, and therefore concluded and believed that it was unable to make proof of the payment of the alleged delinquent tax for 1887, which it was necessary to do to quiet title in it to these premises, and by reason of the total want of any evidence available to this defendant to show the payment of such alleged delinquent tax for 1887 no evidence was offered in such action upon the question, and judgment was awarded on February 23, 1914, in favor of the *Washburn Land Company,* defendant in that action and plaintiff in this action, quieting title to the land in it. Notice of entry of judgment was served and no appeal was taken from such judgment. The *Washburn Land Company* took no steps to enforce such judgment until February 24, 1915, when it demanded payment from this defendant for the timber cut on these premises in 1912. The counterclaim alleges:

"That thereafter and on or about March 24, 1915, said receipt issued by the town treasurer of the town of Mason to defendant's said grantors for the taxes paid by them on lands in said town for the year 1887, was accidentally discovered among some old papers, supposed to be of no value, belonging to this defendant, which had been removed many years ago from the vault and files of this defendant and placed in an old cupboard in a store room. That said receipt was not found in a place or among any papers with which it could reasonably be expected to be found, but was discovered in an envelope containing old canceled checks and other worthless papers, none of which papers in any wise pertained to any land purchased or transactions of this defendant."

It is alleged that defendant's officers, agents, and servants were ignorant of the existence of this tax receipt, or its contents, or that it in fact had been misplaced, and that the failure to discover it sooner was not due to any neglect, fault, or

lack of diligence on their part; that J. W. Humbird prior to 1905, when the present owner purchased the defendant's stock of him, managed, controlled, and cared for all papers pertaining to titles of land owned by defendant, including tax receipts, and that he died prior to the discovery by defendant of the tax deed in question in 1912; that the tax receipt on its face indicates that the alleged delinquent tax on the southwest quarter of the southwest quarter of section 22, town 46, was paid January 8, 1888, to the town treasurer of the town of Mason by defendant's grantors, and that such tax was in fact so paid by them, and that the tax deed issued for such tax as delinquent, as above stated, was in fact wrongfully issued through the mistake of returning such tax so paid on the land in controversy as delinquent, and that the accidental misplacement of such receipt as above stated rendered it impossible for defendant to make proof thereof in its action to quiet the title to such land in it and resulted in the judgment quieting such title in plaintiff, and, by reason of the mistake in reporting and selling such land for the nonpayment of such tax and the accidental loss of the tax receipt as stated, the judgment obtained by plaintiff in the former action is unjust and inequitable, and its enforcement would be against conscience and justice.

The plaintiff demurred to the counterclaim of the defendant. Such demurrer was overruled by the trial court, and this is an appeal from the order overruling such demurrer.

For the appellant there were briefs by *A. W. MacLeod* of Washburn, attorney, and *Luse, Powell & Luse* of Superior, of counsel, and oral argument by *Mr. L. K. Luse* and *Mr. MacLeod.*

For the respondent there were briefs by *Olin, Butler, Stebbins & Stroud* of Madison, and oral argument by *Byron H. Stebbins.*

SIEBECKER, J. The main controversies on this appeal involve the inquiries: (1) Has the defendant stated a case for

equitable relief against the judgment awarded in plaintiff's favor quieting the title in the lands in question? and (2) If such a case is stated, is it pleadable as a counterclaim in this action?

It is earnestly contended by the plaintiff that upon the facts stated in the answer the defendant is not entitled to equitable relief to restrain the enforcement of the judgment adjudging that the plaintiff is the absolute owner of the premises under the tax deed issued by Bayfield county on May 19, 1891. This contention is made upon the grounds that such equitable relief is not available in this case because under the Code procedure that judgment is in substance and effect a decree in equity and distinguishable from judgments at law. It is claimed that such distinction is preserved under the Code in civil actions in the courts of record in this state; that the remedy by bill of review, which was employed to obtain such equitable relief against the enforcement of such a judgment, having been abolished by the Code, the defendant is precluded from invoking the jurisdiction of equity to obtain such relief, and that it is restricted to the modes of relief provided in the Code for relief from judgments. Much reliance is placed in argument on the principle applied in *Crowns v. Forest L. Co.* 102 Wis. 97, 78 N. W. 433, and other cases holding in effect that the Code of Procedure was intended as a substitute for the old forms of action and modes of procedure and that the former procedure by bill of review for relief from judgments no longer exists. It is contended that under the Code procedure relief from judgments is restricted to the grounds of inadvertence, surprise, mistake, and excusable neglect, and that relief upon these grounds can only be obtained within the limited time and in the manner provided by the Code, except that the enforcement of a judgment may be restrained in a direct proceeding when it is shown that facts have been discovered, after the expiration of such time, which show that a judgment is infected by fraud and its enforcement would be unjust and unconscionable. This contention is based on the

claim that the adjudications of this court establish that judgments in civil actions under the Code are distinguishable and are to be classified as decrees in equity and judgments at law. The *Crowns Case* and other cases do not support this contention. They are in harmony with the express declaration of the Code provisions declaring there is but one form of action: "The distinction between actions at law and suits in equity, *and the forms of all such actions and suits, have been abolished, and there is in this state but one form of action."* Sec. 2600, Stats. Legal and equitable causes of action are governed by the one system of practice and pleading prescribed in the Code, which is to be employed in all civil actions "for the enforcement or protection of a right, the redress or prevention of a wrong," whether they arise at law or in equity. A court in enforcing rights and redressing wrongs can award but one final judgment in the actions to determine the rights of the parties, whether they arise at law or in equity, or both. True, the Code provides for relief against judgments by the court awarding them and how such relief must be obtained during the term at which they were rendered or within the time limited and in the manner provided by sec. 2832, Stats. But such remedy has not been held to deprive a party of the equitable relief by a direct action to restrain a party from enforcing an unjust and unconscionable judgment, when the statutory remedy is not available. The fact that the Code does not recognize the procedure of the ancient form by bill of review does not in itself bar a party from obtaining the equitable remedy that was enforced by such a bill. Although the Code abolished forms of procedure that had been employed at law and in equity to enforce rights and redress wrongs, the reform did not abolish the recognized and established remedial rights at law and in equity.

"The circuit courts of this state have, under the constitution, succeeded to all the jurisdiction formerly exercised by courts of law and courts of chancery as well; and though old

forms of enforcing judicial remedies have been abolished, that does not mean, necessarily, that the remedies have been abolished. The forms have ceased to exist, but substituted therefor and in place of all we have one form of remedy, denominated a 'civil action.'" *Harrigan v. Gilchrist,* 121 Wis. 127, 231, 99 N. W. 909.

The provisions of the Code do not operate to destroy the jurisdiction in equity to grant relief theretofore recognized for the enforcement of rights and the redress of wrongs. The remedial rights established at law and in equity subsist, but are to be enforced in the manner contemplated by the Code. The abolition of the ancient bill of review in equity, therefore, has not abrogated any of the remedial rights, but they are enforceable by procedural methods in harmony with the Code, which is applicable alike to all civil actions, whether the rights involved are governed by the rules at law or in equity. The power of courts to afford relief pursuant to the Code for the enforcement of rights and the redress of wrongs is well expressed in *Balch v. Beach,* 119 Wis. 77, 86, 95 N. W. 132:

"Above all and over all is the supreme principle to which the vigilant, clean-handed, but wronged party may resort when all legal remedies fail, and even precedents for an equitable remedy also, fitting the situation with exactness as to facts,—that equity suffers no wrong to go without a remedy, the wrong being of sufficient gravity to be appreciated by the conscience of the chancellor, and application being made to its jurisdiction seasonably and with clean hands."

It is considered that the remedial rights of equitable relief against an unjust and unconscionable judgment by way of restraining the party who seeks to enforce it may be invoked under the Code procedure in all appropriate cases against judgments in all civil actions. *Johnson v. Coleman,* 23 Wis. 452; *Orient Ins. Co. v. Sloan,* 70 Wis. 611, 36 N. W. 388; *Laun v. Kipp,* 155 Wis. 347, 145 N. W. 183. The claim that such relief is not available in the instant case because

the judgment determined only equitable rights of the parties cannot be sustained. The adjudications of this court furnish ample authority for the exercise of this equitable jurisdiction in proper cases. This doctrine was clearly announced and applied in the early case of *Stowell v. Eldred,* 26 Wis. 504, as follows:

"The rule seems to be quite well settled, that chancery will relieve against a judgment at law on the ground of its being contrary to equity, when the defendant in the judgment was ignorant of the fact in question pending the suit, or it could not have been received as a defense, or when he was prevented from availing himself of the defense by fraud or accident or the acts of the opposite party unmixed with negligence or fault on his part."

We cannot presume to add anything to the clearness and fulness of this statement of the doctrine or render any aid by attempting to amplify it by discussion. The federal supreme court states it thus in *Marine Ins. Co. v. Hodgson,* 7 Cranch (11 U. S.) 332:

"Without attempting to draw any precise line to which courts of equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may safely be said that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law; or of which he might have availed himself at law, but was prevented by fraud or accident unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery."

The following cases in this court deal with this form of relief: *Johnson v. Huber,* 106 Wis. 282, 82 N. W. 137; *Balch v. Beach,* 119 Wis. 77, 95 N. W. 132; *Boring v. Ott,* 138 Wis. 260, 119 N. W. 865; *Laun v. Kipp,* 155 Wis. 347, 145 N. W. 183; *Zohrlaut v. Mengelberg,* 158 Wis. 392, 148 N. W. 314, 149 N. W. 280. See, also, *Oro Fino & Morning Star M. Co. v. Cullen,* 1 Idaho, 113. These cases all hold in effect that the former judgment is not disturbed and that

no retrial of any issues litigated in the action and determined in the judgment is permitted. The courts act upon the party by forbidding him to enforce the judgment and thus prevent him from reaping the fruits of an unjust and unconscionable judgment. *Crowns Case, supra; Balch Case, supra; Zohrlaut Case, supra.* It is asserted that this equitable relief can be invoked only in cases of fraud and that the defendant here has no such cause of action and hence no standing in court. The judicial statements on the subject quite explicitly declare that this equitable jurisdiction can be invoked upon the grounds of accident and mistake. A study of the adjudications beginning with the *Stowell Case* [*Stowell v. Eldred,* 26 Wis. 504] discloses this result. The rule is stated thus in Freeman on Judgments, sec. 486·:

"While the courts of equity in England and in the several states of this Union have uniformly refused their aid in all cases where their action would involve either the usurpation of appellate jurisdiction or the granting of a second opportunity of presenting a cause upon its merits, they have, on the other hand, uniformly extended their beneficent principles and their varied and efficient means of relief over a large and well-defined class of cases, to the end that no man should retain an unconscientious advantage procured by him in a court of law or of equity through his own fraud or through some excusable mistake or unavoidable accident on the part of his adversary. . . . To entitle a party to relief from a judgment or decree, it must be made evident that he had a defense upon the merits, and that such defense has been lost to him, without such loss being 'attributable to his own *omission, neglect,* or *default.*' " *Davis v. Tileston,* 6 How. (47 U. S.) 114, 119; *Wingate v. Haywood,* 40 N. H. 437; *Nat. S. Co. v. State Bank,* 120 Fed. 593.

It is urged that the facts stated in the counterclaim do not constitute a cause of action for equitable relief upon the grounds of a mistake or unavoidable accident. We must give the allegations a liberal interpretation. It appears from the facts alleged that the officers, agents, and servants

of the defendant used due diligence to find the tax receipt in question at the time the former action to quiet title to this land was pending for trial, and that they made repeated efforts by exhaustive search to ascertain its existence for the purpose of offering it as evidence on the trial, but utterly failed to find it, and that it was accidentally discovered in March, 1915, among papers that had been discarded as useless and which were of a nature wholly different from this tax receipt. It also appears that this receipt was so misplaced while the former owner of the defendant company, who is now deceased, had control thereof, and that the present owners of the defendant and their officers, agents, and servants had no part in or knowledge or suggestion of such misplacement of the paper. These facts and circumstances present a case of accidental loss of this receipt. The facts show that defendant was in all probability defeated in the action to quiet title because it had not discovered the receipt in season to present it as evidence in that case. Under this state of facts it is apparent that the defendant undesignedly sustained a legal loss, unmixed with any negligence or fault on its part, and is entitled to the equitable relief prayed for, if the allegations of the counterclaim are sustained by evidence.

Is the defendant's cause of action pleadable as a counterclaim? , Sec. 2656, Stats., provides that a counterclaim must be "a cause of action arising out of the contract or transaction set forth in the complaint as the foundation of plaintiff's claim or connected with the subject of the action." It is manifest that the alleged counterclaim is connected with the plaintiff's rights established by the judgment in the former action, and if maintained will defeat the plaintiff's right to a recovery upon its cause of action founded on the rights determined in such judgment. It is difficult to perceive of a case wherein the cause of action of defendant's counterclaim can be more directly connected with the subject of the plaint-

iff's cause of action than the one presented here.    The de-
fendant's cause of action goes to defeat the very judgment on
which plaintiff bases its rights to a recovery and constitutes
the basis for affirmative relief to defeat the relief plaintiff
demands.    *Stowell v. Eldred,* 39 Wis. 614; *Chicago & N. W.
R. Co. v. McKeigue,* 126 Wis. 574, 105 N. W. 1030; *Emer-
son v. Nash,* 124 Wis. 369, 102 N. W. 921; *McArthur v.
Moffet,* 143 Wis. 564, 128 N. W. 445.

The counterclaim states facts sufficient to constitute a cause
of action and is properly pleaded as a counterclaim.

*By the Court.*—The order appealed from is affirmed.