WASEM, Appellant, v. ELLENS, et al, Respondents

(4 N. W.2d 850.)

(File No. 8500.   Opinion filed July 20, 1942.)

**Bailey, Voorhees, Woods & Bottum** and **M. T. Woods,** all of Sioux Falls, for Appellant.

**Doyle & Mahoney,** of Sioux Falls, for Respondents.

RUDOLPH, P.J. This is an appeal from an order dismissing the plaintiff's complaint. The question presented is whether the complaint states a cause of action. The facts alleged are substantially as follows:

Plaintiff is the administratrix of the estate of William H. Wasem, her deceased husband. In the action she seeks to procure an injunction against the enforcement of a judgment obtained by defendants against Mr. Wasem. The judgment which it is sought to enjoin was one for a deficiency resulting from a mortgage foreclosure and based upon the theory that Mr. Wasem although not the mortgagor had assumed the payment of the mortgage. The principal defense in the action wherein the judgment was obtained was that the mortgagee had released in writing the obligation assumed by Mr. Wasem. At the trial Mr. Wasem was unable to produce the claimed release in writing and secondary evidence thereof was received and this issue fully litigated. The trial court found against the defendant on this issue and found as a fact that the mortgagee never executed or delivered the release and never released Mr. Wasem from the obligation. Judgment was entered and upon appeal to this court the judgment was sustained. Ellens

et al. v. Lind et al., 66 S. D. 515, 286 N. W. 322. The complaint then alleges than on January 15, 1940, while washing some old clothes, the plaintiff found the original of the release in the washing machine and that she immediately communicated this fact to the attorneys for the defendants and requested a vacation of the judgment which was refused whereupon she commenced this action seeking to permanently enjoin the enforcement of the judgment.

It will be noted from the above statement of the facts as alleged in the complaint that there is no claim of fraud or any claim that the plaintiff was prevented from having a fair and impartial trial by any act of the defendants. It should be further noted that the issue of whether the release was ever executed and delivered was fully litigated in the trial in which the judgment was entered. The sole claim for the relief demanded is the allegation that plaintiff is now in a position to produce the original of the release which had been mislaid and which was not for that reason produced at the original trial.

██ This court held in the case of Zarneke et al. v. Kitzman, 44 S. D. 295, 183 N. W. 867, 869, "that where a written instrument, evidentiary in character, has been lost or mislaid, through excusable mistake or inadvertence, and could not with due diligence be made available at the trial, and where such instrument is subsequently found or discovered, it may properly be considered as newly discovered, within the meaning of the statute," which permits the court to grant a new trial on the ground of newly discovered evidence. We must therefore in this case start with the premise that the discovery of the release in the washing machine was the discovery of new evidence within the meaning of SDC 33.1605 which sets forth the causes for granting a new trial. SDC 33.1606 together with SDC 33.0711 limits the time within which the court may entertain an application for a new trial upon the grounds of newly discovered evidence to one year after the filing of the judgment, or if an appeal is taken to the time the case is finally determined upon appeal, not exceeding, however, one year after the judgment is filed. The question immediately arises whether

the plaintiff may through the means here adopted, i. e., an injunction to restrain the enforcement of the judgment, have a new trial of the issue which the former judgment finally determined, based on the ground of newly discovered evidence and have such new trial long after the statutory time within which the court was authorized to grant a new trial upon this ground.

The Washington Court in the case of Denny-Renton Clay & Coal Co. v. Sartori et ux., 87 Wash. 545, 151 P. 1088, 1091, was confronted with a similar, if not identical, question to that which is now before us, and in a well-reasoned opinion that court said:

"Respondents contend that the remedy provided by sections 464 and 465 of Rem. & Bal. Code applies to all cases where the new evidence by the exercise of due diligence is not discovered until too late for the ordinary motion, and that the remedy so provided is exclusive; that the statute is one of repose, and that after the expiration of one year from the entry of final judgment a suit in equity for a new trial upon the ground of newly discovered evidence cannot be maintained unless the failure to discover the new evidence within the year was occasioned by the concealment or fraud of the adverse party. A most careful consideration of the matter convinces us that this position is sound. * * *

"It is a legal commonplace that in construing remedial statutes courts will look to the prior law and the mischief to be met in order to determine the scope of the remedy. The power to grant new trials has always been largely discretionary. At common law it was first sparingly exercised, only for matters appearing in the record, never after the entry of judgment, and never for newly discovered evidence. Moore v. Coates, 35 Ohio St. 177. Later this was accepted as a ground, but only with caution and in extreme cases. See Hilliard on New Trials (2d Ed.) p. 493, and cases there cited.

"At common law judgment was not entered until the next term after trial, and then only on notice. Motions for new trial were required to be made within the first four

days of the succeeding term, thus insuring their present-
ment before judgment. Conklin v. Hinds, 16 Minn. 457, [16]
Gil. 411; 2 Blackstone's Commentaries (3 Lewis's Ed.) p. 387.

"In suits in equity new trials after judgment were ob-
tained through bills of review, and when for newly discov-
ered evidence the time was left entirely to the discretion of
the court, governed by the equities of the particular case.
Apparently there was no limit to the exercise of this discre-
tion short of 20 years. 2 Daniell's Chancery Pleading &
Practice (6th Am. Ed.) p. 1565. Owing to the shortness of
time within which a court of law could grant a new trial
for new evidence, courts of equity in time assumed jurisdic-
tion to relieve against judgments at law by enjoining their
enforcement on the ground of newly discovered evidence.
While this jurisdiction was sparingly exercised, there seems
to have been no acknowledged limit of time save the general
doctrine of laches, dependent on the facts of each case.

"Such being the prior law, the mischief was obvious.
Courts of law could not relieve against a judgment after its
entry on the ground of newly discovered evidence, however
great the injustice or manifest the hardship. On the other
hand, courts of equity could relieve against their own de-
crees or interfere with judgments at law almost ad libitum,
thus importing an element of uncertainty into every case
and inviting endless litigation. It was to meet this mis-
chief that statutes such as ours were passed. In jurisdic-
tions where the distinction between law and equity has
been preserved, the power of the law courts to grant new
trials has been enlarged and the power of courts of equity
to entertain bills of review has been limited in time. In
jurisdictions where, as here, the distinction between actions
at law and suits in equity has been abolished, the mischief
of the old law has been met by statutes regulating new trials
in all classes of actions without distinction, to the end that
there might be a certain finality to both judgments and de-
crees. As stated in Williams v. Starkweather, 24 R. I. 512,
53 A. 870:

" 'The difference between a bill of review and a petition
for rehearing is technical rather than substantial. Both seek

to set aside and reverse an original and final decree. It is important in equity proceedings, as well as in actions at law, that there should be a time when decrees become fixed and absolutely final.'

"It seems too clear for argument that, by abolishing the distinction between actions at law and suits in equity and adopting the one-year limit of time within which courts may vacate judgments for newly discovered evidence, it was the intention in this state to limit the time within which the judgment of a court of competent jurisdiction and which had legally acquired jurisdiction of the parties and subject-matter could be either directly or collaterally attacked."

Appellant relies to a large extent upon the Wisconsin case of Washburn Land Co. v. White River Lumber Co., 165 Wis. 112, 161 N. W. 547. That case expressly approved the earlier Wisconsin case of Crowns v. Forest Land Co., 102 Wis. 97, 78 N. W. 433, 436, wherein it was held under the reformed Code procedure that, "Where the relief is sought on the ground of newly-discovered evidence alone, unmixed with any circumstances of fraud or collusion, the application must be made within the time limited * * *." Should the later Wisconsin case be construed as intending to extend the meaning of "fraud or collusion" as used in the Crowns-Forest Land Co. case to include mistake, inadvertence, surprise or excusable neglect, then we are unable to approve this case in view of SDC 33.0108 which limits the power of the court to relieve a party based upon such reasons to a period of one year. Purinton v. Purinton, 41 S. D. 125, 169 N. W. 236.

■ We are of the opinion that to grant plaintiff the relief which she is demanding would virtually abrogate the time limitation fixed by the statute for a new trial based upon newly discovered evidence and the statute limiting to one year the authority of the court to grant relief from a judgment because of mistake, inadvertence, surprise or excusable neglect. The Code provisions were adopted as a part of the reformed Code procedure to the end that there might be a certain finality to judgments.

■■ The thought has been expressed that this jurisdiction of equity to grant relief from judgments on the ground of newly discovered evidence is a jurisdiction that the legislature might not limit or destroy by the adoption of the reformed procedure. However, in determining the extent of the jurisdiction of equity in South Dakota, in so far as it is not subject of encroachment by the legislature, we look to the time of the adoption of our Constitution. State v. Nieuwenhuis, 49 S. D. 181, 207 N. W. 77. The reformed procedure with the provisions for and limitations on the application for a new trial was a part of our procedure at the time the Constitution was adopted. Compiled Laws 1887, Secs. 5087 to 5094. It follows, therefore, that the jurisdiction possessed by equity in South Dakota to grant relief from judgments on the ground of newly discovered evidence is not the jurisdiction of the old courts of equity, but the jurisdiction of equity as it existed under the reformed Code procedure. The extent of that jurisdiction we believe is ably stated in the case of Denny-Renton Clay & Coal Co. v. Sartori et ux., supra. Referring to this subject, Hayne, New Trial and Appeal, page 1746, states that the relief offered under the Code "is of so liberal a character that nothing short of a showing of absolute fraud, extrinsic in character and therefore collateral to the original inquiry, will be held to justify a court of equity in granting a practical extension of that relief." See, also, Pomeroy's Equity Jurisprudence, 5th Ed., Sec. 1365.

■ The order appealed from is affirmed.

POLLEY, ROBERTS, and SMITH, JJ., concur.

WARREN, J., dissents.