1999 SD 82

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Tammra Ranee GEHM, Defendant and Appellant.**

**No. 20459.**

Supreme Court of South Dakota.

Considered on Briefs Dec. 3, 1998.

Decided June 30, 1999.

Mark W. Barnett, Attorney General, Gay Klima Tollefson, Ronald D. Campbell,

Assistant Attorneys General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Kenneth D. Bertsch, Menno, South Dakota, Attorney for defendant and appellant.

KONENKAMP, Justice.

[¶ 1.] In this case we must decide whether documents augmenting an alibi defense, and other evidence, all discovered after trial, merit granting a new trial. Papers defendant found in her possession after her convictions for multiple statutory rapes tended to prove that she was not present at one of the times charged. Nonetheless, the trial court denied her new trial motion and we affirm, concluding that because her late discovery of evidence was the result of her own lack of diligence, and the new evidence fails to give her a conclusive alibi, the trial court's ruling was not an abuse of discretion.

### Facts

[¶ 2.] On December 11, 1994, Defendant, Tammy Gehm, age 36, invited E.W.F., age 15, to stay in her home after a fire in his own home left it temporarily uninhabitable. Gehm's son, Jeremy, and E.W.F. were best friends. E.W.F. moved in immediately and stayed for six weeks. He first shared a room with Jeremy. Gehm slept in the living room, but kept her clothing and personal effects in a small bedroom. Gehm's daughter, Rebecca, slept in her own bedroom. After Jeremy stole some of E.W.F.'s trading cards, Gehm decided to separate the boys. She had E.W.F. sleep in the bedroom where she kept her clothing. E.W.F. later testified that it was in this bedroom he and Gehm had sexual intercourse at least ten times. These encounters mostly happened at night while Rebecca and Jeremy were presumed asleep in their bedrooms. One occurred during the day, while Rebecca and Jeremy were at school. The last happened in June when E.W.F. came to visit.

[¶ 3.] On four successive nights Rebecca came to Jeremy's room to tell him that she heard "noises" coming from the adjacent bedroom where E.W.F. was sleeping and that she thought "mom and [E.W.F. were] having sex." Each night as Jeremy walked from his room to Rebecca's room to listen at a door separating Rebecca's room from E.W.F.'s, he noticed that his mother was not in the living room. On the first three nights, he heard noises he could not decipher, sounds of movement, but on the fourth night he heard something he thought more telling. "This night I had heard moaning noises to what had sounded like two people having sex. I had heard talking going on. And I heard the bed moving ... it sounded like it was moving back and forth." He could not identify anyone's voice, but on this night also, his mother was not in the living room.

[¶ 4.] Later, Jeremy separately confronted both his friend and his mother about his suspicions. E.W.F. admitted it. Gehm denied it, but said that if true, it would be none of Jeremy's business. Nevertheless, the matter remained undisclosed to the authorities until Jeremy apparently told a counselor while in treatment at Our Home in Huron. On May 19, 1997, Gehm was indicted on six counts of third degree rape, a Class 3 felony. In response to the State's demand under SDCL 23A–9–1, she filed a notice of alibi on August 15, 1997. It stated, "Defendant intends to offer a defense that at the times of the alleged offenses as set forth in the indictment, Defendant may have been with LaMont Johnson at this residence in Parkston, SD." During the period that Gehm and E.W.F. were purportedly engaging in sexual relations, Gehm began dating Johnson. Although they could not agree when they first met, both Johnson and Gehm said they were having a sexual relationship during at least part of the time that E.W.F. claimed he and Gehm were engaging in sex. Johnson and Gehm both testified at trial that Gehm would put her children to bed and then go to Johnson's

house, have sex, and return home before the children awoke in the morning.

[¶ 5.] The jury convicted her on all six counts. After trial, anticipating a prison sentence, Gehm was packing her belongings for storage when she chanced upon two documents. One showed that at 9:00 a.m. on both Monday and Tuesday, January 30 and 31, 1995, she was scheduled for training in Mitchell with Ted Safranski of the South Dakota Department of Labor. The other document was a school notification that on February 1, 1995 at 8:15 a.m., she was to attend a meeting at Parkston High School regarding her son. These papers, she believed, gave her a new alibi for the third degree rape charged in count three.

[¶ 6.] Count three averred that the rape occurred "between January 31, 1995, and February 1, 1995." Concerning this count, E.W.F. testified that on a Tuesday in the latter part of January, he did not attend classes because he was to meet with an insurance adjuster. He was sure it was a Tuesday because every Tuesday on his paper route he handed out special flyers with the papers and he remembered handing out flyers the day of this sexual encounter. E.W.F. testified that between 9:00 and 10:30 a.m. they engaged in sex, after Gehm's children left for school. His attendance records offered at trial, however, showed that he had not missed school on a Tuesday during that time, but he was absent on Monday, January 30. At trial the prosecutor argued that E.W.F. might have been a day off in his recollection. Yet with her new alibi, Gehm contends it would not be possible for her to have committed the acts at the times alleged.

[¶ 7.] In support of her motion for new trial, Gehm never offered the training schedule document she claimed to have found, but she did submit an affidavit from the instructor, Sefranski, that stated: "Tammy Gehm attended a session conducted by me on January 30, 1995 and January 31, 1995. The sessions ran from 9:00 o'clock a.m. to 11:30 o'clock a.m. and from 1:00 o'clock p.m. to 4:00 p.m. on both days." In response, one of the prosecutors submitted an affidavit saying that she talked to Sefranski and he told her that the sessions were held three years ago; that he had no personal recollection of any particular session; that he conducted the training monthly; that he depended on his computer records for attendance information; and "that he told the defense and now he was telling the State that according to his records, the defendant did attend the sessions on January 30 and 31, 1995 but that he could not 'honestly' say whether the defendant was on time or late for these sessions which began at 9:00 a.m." Gehm's home was approximately a thirty-minute drive from the training location in Mitchell.

[¶ 8.] Gehm's other after-discovered document was a parental notice from Parkston High School scheduling a meeting to discuss a change in Jeremy's special education plan. The meeting was to begin at 8:15 a.m. on February 1, 1995. It most certainly took place on that day because on the school's IEP addendum, Gehm's signature appears along with the signatures of the four school personnel who attended the meeting, with each signature hand dated "2–1–95." Nonetheless, the same prosecutor who interviewed Sefranski, also talked to Parkston High School Principal Joe Kollman, one of the meeting attendees. In her affidavit she stated that "the only thing [Kollman] could say with a reasonable degree of certainty is that the meeting occurred sometime during February 1, 1995." According to her, he refused to sign an affidavit stating what time the meeting occurred because he had no recollection of it and "because even though the meeting was scheduled for 8:15 a.m., it is common for parents to call in for a different time during the day and that it is possible that this meeting occurred later in the day."

[¶ 9.] Lastly, in further support of her motion for new trial, Gehm's defense attorney obtained from the State a chronologi-

cal record of Jeremy's involvement with the Department of Social Services. It showed, among many other things, that in a June 1992 interview, Jeremy, in response to questions about his sexual knowledge, told social workers and law enforcement investigators that in the past while he was living with his grandparents in Parkston he once saw them "one on top of the other" and knew they were "making love." To discredit this remark, Gehm's attorney obtained an affidavit from Jeremy's grandmother stating "there is no way that Jeremy could have observed me and my husband having intercourse."

[¶ 10.] To reinforce her new trial motion, Gehm reminded the court that during cross-examination E.W.F. could not recall exactly which sexual positions he and Gehm took that day, contradicting his testimony on both direct examination and before the grand jury. Also, he apparently could not identify prominent marks on Gehm's body, though some of the sex acts happened in the daytime. E.W.F. said he saw a mole between Gehm's lower back and buttocks. Gehm and Johnson testified, however, that Gehm has visible moles on her breasts and a hysterectomy scar, but no mole on her lower back. Taken together, Gehm argued, the contradictions in E.W.F.'s testimony, his attendance record, and the evidence showing that Gehm was at training sessions and a meeting at school, could have given the jury reasonable doubt whether Gehm and E.W.F. actually had sexual relations on January 31 or February 1, 1995 as charged in the indictment.

[¶ 11.] In all, Gehm moved for a new trial on three grounds: (1) Jeremy's false statement about seeing his grandparents having intercourse discredited his testimony against his mother; (2) Gehm's recently discovered documents gave her a previously unknown alibi defense to count three of the indictment; and (3) considering this new information and the proof offered at trial, the evidence was insufficient to sustain any of the six convictions. The trial

court denied the motion. Gehm was sentenced to six years in the South Dakota State Penitentiary on each count, the sentences to be served concurrently. She appeals raising the following issues: 1. Whether the trial court abused its discretion in denying a new trial based on newly discovered evidence. 2. Whether the record contains evidence sufficient to sustain Gehm's conviction on all the rape counts.

**Standard of Review**

[¶ 12.] We review a trial court's denial of a motion for new trial under SDCL 23A–29–1, the same as its civil counterpart in SDCL 15–6–59(b):

> Whether a new trial should be granted is left to the sound judicial discretion of the trial court, and this Court will not disturb the trial court's decision absent a clear showing of abuse of discretion. If the trial court finds an injustice has been done by the jury's verdict, the remedy lies in granting a new trial. We determine that an abuse of discretion occurred only if no judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion.

*Border States Paving, Inc. v. State Dep't of Transp.*, 1998 SD 21, ¶ 11, 574 N.W.2d 898, 901 (quoting *Schuldies v. Millar*, 1996 SD 120, ¶ 8, 555 N.W.2d 90, 95 (citation omitted)). Our standard of review for denial of a motion for judgment of acquittal is whether the State presented sufficient evidence from which the jury could reasonably find the defendant guilty of the crime charged. *State v. Abdo*, 518 N.W.2d 223, 227 (S.D.1994) (citing *State v. Lykken*, 484 N.W.2d 869, 875 (S.D.1992)); *State v. Gallipo*, 460 N.W.2d 739, 742 (S.D.1990) (citations omitted). The question is whether there is adequate evidence in the record to sustain a finding of guilt beyond a reasonable doubt. Under this standard, we accept the evidence, and the most favorable inferences fairly drawn therefrom, in support of the verdict. *State v. Heftel*, 513 N.W.2d 397, 399 (S.D.1994) (citations omitted); *State v. Thompson*, 1997 SD 15, ¶ 34,

560 N.W.2d 535, 542–43 (quoting *State v. McGill*, 536 N.W.2d 89, 91–92 (S.D.1995)).

### Analysis and Decision

#### 1. Newly Discovered Evidence

[¶ 13.] If they receive a fair trial in the first instance, convicted defendants bear a heavy burden in obtaining a new trial based on newly discovered evidence. SDCL 15–6–59(a)(4); *State v. Lufkins*, 309 N.W.2d 331, 335 (S.D.1981) (citation omitted); *State v. Weston*, 47 S.D. 328, 198 N.W. 826, 827 (1924)(new trial applications based on new evidence viewed with distrust and disfavor). Those who seek another trial on after-discovered evidence must show: (1) the evidence was undiscovered by the movant at the time of trial; (2) the evidence is material, not merely cumulative or impeaching; (3) that it would probably produce an acquittal; and (4) that no lack of diligence caused the movant to fail to discover the evidence earlier. *Lufkins*, 309 N.W.2d at 335–36 (citing *State v. Laper*, 26 S.D. 151, 128 N.W. 476 (1910)). *See generally State v. Steele*, 510 N.W.2d 661, 665 (S.D.1994); *State v. Willis*, 396 N.W.2d 152, 153 (S.D.1986); *State v. Kaseman*, 273 N.W.2d 716, 728–29 (S.D. 1978). *But see United States v. Taglia*, 922 F.2d 413, 415 (7th Cir.1991)(in some instances newly discovered evidence should not be trivialized as merely impeaching), *cert. denied sub nom. McDonnell v. United States*, 500 U.S. 927, 111 S.Ct. 2040, 114 L.Ed.2d 125 (1991).

[¶ 14.] Gehm asserts that her newly discovered evidence provides a new alibi for the offense charged in the third count of the indictment. Furthermore, she contends that because the only eyewitness against her was E.W.F. and her alibi for count three so damages his entire testimony, she should be granted a new trial on all counts. We must ask first whether the papers she found were really "newly discovered," as they were always in her possession. Some courts hold that evidence may not be considered "newly discovered" when before trial it was among movants'

possessions, from which they later "discover" it, *Rand v. Kipp*, 27 Mont. 138, 69 P. 714, 715 (1902), or later realize its relevance. *United States v. Loney*, 959 F.2d 1332, 1343 (5th Cir.1992); *Wendling v. Southwest Sav. and Loan Ass'n*, 143 Ariz. 599, 694 P.2d 1213, 1216–17 (Ct.App.1984). *See also* 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2859, at 182–83 (1973). In South Dakota, a document known to exist before trial, but lost through excusable mistake, that could not with diligence have been made available at trial, may yet be considered newly discovered when later found. *Wasem v. Ellens*, 68 S.D. 524, 4 N.W.2d 850, 851–52 (1942)(mortgage release document discussed during trial found afterwards in washing machine considered new evidence, but new trial denied as motion was untimely); *Zarneke et al. v. Kitzman*, 44 S.D. 295, 183 N.W. 867, 869 (1921)(both sides testified about lost letter but disagreed about its content—new trial granted after letter found); *Waite v. Fish*, 17 S.D. 215, 95 N.W. 928, 929 (1903) (new trial granted when a month or two after trial while looking over odds and ends, movant "accidentally found" in basement the lost account books referred to but unfound during trial). But, as we shall see, failure to earlier find and produce evidence in one's possession, whether known or unknown before trial, may prohibit a new trial if diligence was lacking in seeking it.

[¶ 15.] New trial motions based on newly discovered evidence request extraordinary relief; they should be granted only in exceptional circumstances and then only if the requirements are strictly met. Because we conclude that two conditions for obtaining a new trial, diligence and probable acquittal, have not been established, we will discuss those elements only. The burden rests on the moving party to show there was no lack of diligence precluding earlier discovery. A new trial applicant will be denied relief, if the same effort to find the evidence expended after trial, would have produced it before trial.

*United States v. Bransen,* 142 F.2d 232, 235 (9th Cir.1944). The papers Gehm found after trial, a letter from her son's school and a training schedule, were always in her exclusive possession. She does not explain why she could not have looked for and found these documents before trial. In fact, except for the social service history on Jeremy, all the evidence that Gehm now presents as "newly discovered" was in her possession or could have easily been obtained before trial. *See, e.g., Styke v. Sioux Falls Motor Co.,* 60 S.D. 358, 244 N.W. 387, 389 (1932) (appellants, at all times, had purchase order that contained material language upon which new trial motion was based). She argues that it would be difficult for any parent to recall a conference with school officials two years after the meeting occurred or to recall the dates she attended training long ago. In ordinary circumstances we would agree. But considering the serious charges against her—sexual relations with a child—it is inconceivable that she would not search out every scrap that might tend to show she was not present at the times her accuser said she was. Due diligence requires reasonable exertion to discover evidence. Her alibi notice mentioned only that at each time she was alleged to have been engaging in sex with E.W.F., she *"may* have been with LaMont Johnson at his residence." (emphasis added). Surely, knowing that she needed proof that she was not with E.W.F., she would reasonably conclude that all possible sources should be checked.

[¶ 16.] Courts have long been skeptical of new trial motions asserting "newly discovered" evidence when petitioners fail to exercise reasonable diligence to discover the evidence beforehand. *State v. Wagemann,* 44 S.D. 186, 183 N.W. 112 (1921)(defendant claimed new proof of alibi to statutory rape conviction, but no showing on why it was not discovered earlier). *See United States v. Tibolt,* 72 F.3d 965, 972–73 (1st Cir.1995)(new trial denied when defendant failed to exercise due diligence to discover house had been investigative

target), *cert. denied,* 518 U.S. 1020, 116 S.Ct. 2554, 135 L.Ed.2d 1073 (1996); *Virgin Islands v. Lima,* 774 F.2d 1245, 1250 (3d Cir.1985)(new trial denied when testimony of friends of defendant could have been discovered with due diligence); *United States v. Theodosopoulos,* 48 F.3d 1438, 1449 (7th Cir.1995)(new trial denied when defendant and counsel knew of witness's testimony before trial but failed to exercise due diligence to secure it), *cert. denied sub nom. Ghanayem v. United States,* 516 U.S. 871, 116 S.Ct. 191, 133 L.Ed.2d 128 (1995); *United States v. Willis,* 89 F.3d 1371, 1380 (8th Cir.1996) (new trial denied when defendants failed to exercise due diligence by failing to subpoena known witness), *cert. denied,* 519 U.S. 909, 117 S.Ct. 273, 136 L.Ed.2d 196 (1996); *United States v. Reed,* 887 F.2d 1398, 1404 (11th Cir. 1989) (new trial denied when defendant failed to show that he exercised due diligence in trying to locate evidence), *cert. denied,* 493 U.S. 1080, 110 S.Ct. 1136, 107 L.Ed.2d 1041 (1990). Obviously, it is a different matter when new evidence is discovered in the hands of the State. *Steele,* 510 N.W.2d at 665. But except for Jeremy's social service history, that was not the case here.

[¶ 17.] Skepticism only intensifies when the new evidence was always in the movant's possession. *Engler v. Ipswich Printing Co.,* 63 S.D. 1, 256 N.W. 132, 136 (1934); *Styke,* 244 N.W. at 389 (newly discovered evidence consisted of written documents that were in movant's possession and could have been used had movant considered their materiality before trial). *See United States v. Jaramillo,* 42 F.3d 920, 925 (5th Cir.1995)(new trial denied when defendant failed to exercise due diligence to discover alleged error in transcription of videotape where she had tape in possession for three months before trial and knew tape would be introduced at trial), *cert. denied,* 514 U.S. 1134, 115 S.Ct. 2014, 131 L.Ed.2d 1013 (1995). Except to say that it did not occur to her, Gehm gives no reason why she could not have

found this evidence with reasonable diligence before trial. The rule viewing with doubt "new evidence" as grounds for a new trial expresses an age-old policy: Litigation must have a practical finality. *Ackermann v. United States*, 340 U.S. 193, 198, 71 S.Ct. 209, 211–12, 95 L.Ed. 207 (1950). One of the purposes of our criminal justice system is to decide questions of guilt or innocence promptly and fairly. *See United States v. Johnson*, 327 U.S. 106, 112, 66 S.Ct. 464, 467, 90 L.Ed. 562 (1946) (objective of criminal law). That goal cannot be served if those accused accomplish after trial what they should have done before trial—expend vigorous effort exploring their own resources for evidence of their innocence.

 [¶ 18.] We can never know for certain, of course, what influence this new information may have had on the jurors. We doubt that impeachment about Jeremy's claimed eavesdropping on his grandparents would have had much effect. *Willis*, 396 N.W.2d at 154. More troubling, on the other hand, is Gehm's new alibi. Yet it is not enough to ask if the verdict would *possibly* be different. The question is would it *probably* be different. *Id.* at 153–54. To that we must answer no. Her alibi still could not establish with any certainty that she was elsewhere at the time and place charged in the indictment. *See Siers v. Class*, 1998 SD 77, ¶ 23, 581 N.W.2d 491, 497 (citation omitted)(alibi must be inclusive). She can only prove that sometime each day she was either in training or at her son's school, leaving uncertain precisely where she was on the mornings covered in E.W.F.'s testimony. It still comes down to his word against hers. His truthfulness was severely tested in cross-examination and his inconsistencies apparently withstood the attack. We cannot say that given more grist for impeachment, the result would probably be different. Consequently, we find the trial court did not abuse its discretion when it refused to grant a new trial on count three or the remaining counts.

### 2. Sufficiency of the Evidence

 [¶ 19.] Gehm next argues that the evidence was insufficient to sustain her convictions on the six counts of third degree rape. The question is did the State present sufficient evidence from which the jury could reasonably find the defendant guilty of the crimes charged. If the jury believed E.W.F., then there was enough evidence. As we previously stated, it is for the factfinder, not this Court to weigh the evidence and judge the credibility of the witnesses. The evidence in the record was sufficient to sustain Gehm's convictions.

[¶ 20.] Affirmed.

[¶ 21.] MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur.