#25005-a-JKK

**2009 SD 54**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                                    Plaintiff and Appellant,

    v.

JAMES ROBERT STRAHL,                                    Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE FIRST JUDICIAL CIRCUIT
UNION COUNTY, SOUTH DAKOTA

* * * *

HONORABLE STEVEN R. JENSEN
Judge

* * * *

LAWRENCE E. LONG
Attorney General

PATRICIA J. DeVANEY
Assistant Attorney General                              Attorneys for plaintiff
Pierre, South Dakota                                    and appellant.

PHILLIP O. PETERSON
A. JASON RUMPCA of
Peterson and Stuart, Prof. LLC                          Attorneys for defendant
Beresford, South Dakota                                 and appellee.

* * * *

ARGUED ON MAY 27, 2009

OPINION FILED **07/01/09**

#25005

KONENKAMP, Justice

[¶1.]      Defendant was convicted of first degree murder and grand theft. He moved for a new trial based on newly discovered evidence: the State's key witness was twice convicted of perjury in an unrelated criminal case. Finding that the newly discovered evidence was material and probably would produce an acquittal on the first degree murder charge, the circuit court granted a new trial. On appeal, the State argues that the new evidence, being merely impeaching, was insufficient to support the grant of a new trial. We find no abuse of discretion because the newly discovered evidence was material and so discredited the State's key witness as to probably produce an acquittal of first degree murder.

**Background**

[¶2.]      Defendant James Robert Strahl was charged on June 28, 2006 with the 1998 killing of William O'Hare. He was indicted on alternative counts of first degree murder, second degree murder, or first degree manslaughter. He was also indicted on one count of grand theft for stealing O'Hare's car. Defendant pleaded not guilty to all charges and proceeded to trial. In August 2007, after twenty-one hours of deliberation, a jury returned guilty verdicts of first degree murder and grand theft. Defendant received a life sentence for the murder and an additional ten years for the grand theft.

[¶3.]      In September 2007, defendant moved for a new trial based on newly discovered evidence. He alleged that the State's witness, Aloysius Black Crow, lied at trial because he lied during his testimony about another inmate in an unrelated Yankton County criminal case. During defendant's trial, Black Crow testified about

-1-

incriminating statements defendant allegedly made to him while the two were incarcerated. The court denied defendant's motion, finding the evidence to be merely impeaching and cumulative. Defendant appealed to this Court.

[¶4.]     In March 2008, while the appeal was pending, defendant moved for relief from judgment and requested a new trial based on newly discovered evidence and an alleged *Brady* violation. *See* Brady v. Maryland, 373 US 83, 83 SCt 1194, 10 LEd2d 215 (1963). We remanded the matter for the circuit court's consideration. Defendant again claimed that the State's witness, Black Crow, committed perjury in his case. This time, however, defendant's motion cited Black Crow's two recent perjury convictions. While defendant's appeal was pending, Black Crow had pleaded guilty to fabricating recorded conversations he claimed to have had with David Lykken, a fellow inmate, who allegedly confessed to Black Crow the rape and murder of Pamela Jackson and Cheryl Miller. While wearing a "wire," Black Crow had staged a phony confession with another inmate who posed as Lykken.

[¶5.]     In resisting the defendant's motion, the State argued that, although Black Crow fabricated evidence in another case, those falsehoods should not warrant reversal of defendant's convictions in his case. Rather, the State averred that Black Crow's perjurious actions constituted impeachment evidence, which would not have produced an acquittal for defendant. The State further argued that no *Brady* violation occurred because the State had no knowledge of Black Crow's previous perjury at the time of defendant's trial.

[¶6.]     In September 2008, after a hearing, the circuit court granted defendant's motion for a new trial on the first degree murder conviction. According

to the court, although the evidence of Black Crow's perjury was impeaching, it was not merely impeaching. The evidence, the court found, "would have totally destroyed the jurors' ability to believe a word of Black Crow's testimony. And the jury would probably have rejected Black Crow's testimony in its entirety." The court further found that the evidence was material and that without Black Crow's testimony the jury probably would not have returned a guilty verdict against defendant for first degree murder. On the other hand, the court did not believe that the newly discovered evidence would have produced a different verdict on the grand theft charge because Black Crow's testimony on that issue was minimal and DNA evidence and other circumstances solidly tied defendant to the theft. As for the alleged *Brady* violation, the court found it without merit.

[¶7.]    The State appeals the court's decision to grant defendant a new trial on the charge of first degree murder. Neither party challenges the denial of a new trial on the grand theft charge. Defendant moved this Court to dismiss his pending direct appeal, which motion was granted.

## Analysis and Decision

[¶8.]    Defendant's motion for relief from final judgment and request a new trial was considered under SDCL 23A-27-4.1 and SDCL 15-6-59(a)(4).

> Whether a new trial should be granted is left to the sound judicial discretion of the trial court, and this Court will not disturb the trial court's decision absent a clear showing of abuse of discretion. If the trial court finds an injustice has been done by the jury's verdict, the remedy lies in granting a new trial.

State v. Gehm, 1999 SD 82, ¶12, 600 NW2d 535, 539 (quoting Border States Paving, Inc. v. State Dept. of Transp., 1998 SD 21, ¶11, 574 NW2d 898, 901 (quoting

Schuldies v. Millar, 1996 SD 120, ¶8, 555 NW2d 90, 95 (citation omitted))). To succeed on a motion for a new trial based on newly discovered evidence, the defendant must prove:

> (1) the evidence was undiscovered by the movant at the time of trial; (2) the evidence is material, not merely cumulative or impeaching; (3) that it would probably produce an acquittal; and (4) that no lack of diligence caused the movant to fail to discover the evidence earlier.

*Id.* ¶13 (citing State v. Lufkins, 309 NW2d 331, 335-36 (SD 1981) (citing State v. Laper, 26 SD 151, 128 NW 476 (1910))). The State does not dispute that defendant met his burden of proving the first and fourth elements. However, the State asserts that the court failed to strictly apply the appropriate legal standards to its review of the second and third elements. In particular, the State claims that the court erroneously deemed impeachment evidence worthy of warranting a new trial.

[¶9.]    When a trial court grants, rather than denies, a new trial, a clearer showing of an abuse of discretion is required. State v. Springer-Ertl, 2000 SD 56, ¶9, 610 NW2d 768, 770 (citations omitted). This is because trial judges stand in a better position to observe the witnesses and assess their testimony, while we can only review the transcripts. *See* Houck v. Hult, 60 SD 570, 245 NW 469, 470-71 (1932). Nonetheless, "[n]ew trial motions based on newly discovered evidence request extraordinary relief; they should be granted only in exceptional circumstances and then only if the requirements are strictly met." *Gehm*, 1999 SD 82, ¶15, 600 NW2d at 540.

[¶10.]    The four-part test set out by this Court in *Gehm* is similar to tests applied by other courts, including federal courts, in assessing whether a new trial

should be granted based on newly discovered evidence. *See* United States v. Fuller, 557 F3d 859, 863-64 (8thCir 2009) (citations omitted) (five-part test); United States v. Harrington, 410 F3d 598, 601 (9thCir 2005) (citation omitted); United States v. Lipowski, 423 FSupp 864, 867 (DCNJ 1976) (citation omitted) (five-part test); Quick v. State, 757 NW2d 278, 281 (Minn 2008) (citation omitted); State v. Ryan, 229 SW3d 281, 288 (MoCtApp 2007) (citation omitted); State v. Clark, 125 P3d 1099, 1105 (Mont 2005) (five-part test). A recurring question in these types of cases is whether impeachment evidence can ever result in a new trial. According to the State, such evidence should not, especially when the information provided by the witness (now allegedly not credible) was corroborated by physical evidence. Defendant, on the other hand, argues that when impeachment evidence is *material* and would *probably* produce an acquittal, the evidence should support a new trial.

[¶11.] In *Gehm*, this Court cited *United States v. Taglia,* 922 F2d 413, 415 (7thCir 1991) for the proposition that in some cases newly discovered evidence should not be disregarded as merely impeaching. 1999 SD 82, ¶13, 600 NW2d at 540. Other courts have similarly considered whether a new trial can be granted based on newly discovered impeachment evidence. *See* United States v. Hinkson, 526 F3d 1262, 1285 (9thCir 2008); United States v. Wallach, 935 F2d 445, 458 (2dCir 1991); *Lipowski*, 423 FSupp at 867; Mooney v. State, 167 P3d 81, 90-91 (AlaskaCtApp 2007). According to several courts, while the general rule is that impeachment evidence cannot result in a new trial, the rule is not invariable. *See Taglia,* 922 F2d at 415; *Hinkson*, 526 F3d at 1285; United States v. Custis, 988 F2d 1355, 1359 (4thCir 1993) (recognizing that a new trial may be justified); United

States v. Atkinson, 429 FSupp 880, 885 (DCNC 1977); State v. Rogers, 703 SW2d 166, 169 (TennCrCtApp 1985) (citing Rosenthal v. State, 292 SW2d 1, 5 (Tenn 1956)); *see also* 9A Federal Procedure, Lawyers Edition, *Testimonial evidence, generally—Impeachment evidence* § 22:1777 (updated 2008); 3 Charles Alan Wright et al., Federal Practice and Procedure, *Newly Discovered Evidence—In General* § 557 (3ded updated 2009). There are times when newly discovered impeachment evidence is significant and should be given more weight. *Atkinson*, 429 FSupp at 885. When new impeachment evidence effectively eradicates the credibility of a witness, the evidence might warrant a new trial. *Id.*; *Taglia,* 922 F2d at 415; *Hinkson*, 526 F3d at 1285. This is particularly true when the prosecution's case relied heavily on the newly discredited witness. *Atkinson*, 429 FSupp at 885; *Hinkson*, 526 F3d at 1285; Alvarez v. United States, 808 FSupp 1066, 1093 (SDNY 1992).

[¶12.] "[N]ewly-discovered impeachment evidence may be so powerful that, if it were to be believed by the trier of fact, it could render the witness'[s] testimony totally incredible." United States v. Davis, 960 F2d 820, 825 (9thCir 1992). "In such a case, if the witness'[s] testimony were uncorroborated and provided the only evidence of an essential element of the government's case, the impeachment evidence would be 'material[.]'" *Id.* This newly discovered impeachment evidence could be of such material weight that it would probably produce an acquittal. *Id.; Taglia,* 922 F2d at 415.

[¶13.] Here, the court found that Black Crow's fabrication of Lykken's confession and the consequent perjury convictions constituted newly discovered

impeachment evidence. And the court concluded that the impeachment evidence was of such character that it would have shattered Black Crow's credibility in defendant's case. In the court's view, the State bolstered Black Crow's credibility when it elicited from Black Crow that he had previously worked with law enforcement agents in providing information obtained from inmates involved in other crimes, and more specifically, that Black Crow had worn a "wire" to record conversations with one inmate. The court believed this created a false inference that Black Crow's information about inmate Lykken was corroborated by recorded conversations. While the court acknowledged that Black Crow was impeached several times during his cross-examination, the court believed the impeachment at trial went to his motive to lie, rather than to specific instances of dishonesty. Therefore, the court found that the perjury evidence was more than *merely* impeaching.

[¶14.] The circuit court also considered that Black Crow's actions with respect to Lykken and defendant were remarkably similar. Both cases involved "cold case" murders, unsolved for many years. Both cases had considerable media coverage. In fact, Black Crow testified that he knew who defendant was immediately when they were housed together in the Union County jail. Also similar was Black Crow's claim to have befriended Lykken and defendant and convinced them both to tell him, in very specific detail, about their involvement in the respective murders. Based on these similarities, the court found that the newly discovered evidence was material, as it went "to the heart of Black Crow's veracity about [defendant's] 'jailhouse confession' to him[.]"

[¶15.]     Finally, the court ruled that the newly discovered evidence would probably have produced an acquittal of defendant on his first degree murder charge. The court relied in a large part on the fact that the State's evidence of premeditation came predominately from Black Crow's testimony. Black Crow claimed defendant told him he killed O'Hare because O'Hare would not give defendant a ride back home to Sioux City. The State's closing argument drew attention to the fact that the evidence of premeditation was, as Black Crow stated, that O'Hare would not give defendant a ride. Relying on this, the State urged and obtained a first degree murder conviction, despite the existence of the alternative charges of second degree murder and first degree manslaughter. Without Black Crow's testimony, there was a paucity of evidence on how the murder occurred, defendant's connection to the murder weapon, and, ultimately, proof of premeditation. Therefore, in light of Black Crow's perjury in the Lykken case, the court found that his dishonesty "makes him . . . 'utterly unworthy of being believed.'" The court ruled that it had "no hesitation in concluding that the jury probably would have rejected Black Crow's testimony in its entirety" and probably would have acquitted defendant of first degree murder.

[¶16.]     We acknowledge that some of Black Crow's testimony revealed evidence Black Crow would not have known unless he had talked with the actual killer. The court considered this argument, however, and we cannot say that the court's conclusion was unwarranted that the jury would have probably disregarded all of Black Crow's testimony if it had known of his perjury. That the jury would have disregarded *all* of Black Crow's testimony means not that it would have

ignored just the parts that could not be corroborated by physical evidence, but that the jury would have rejected everything. Without Black Crow providing evidence of premeditation, defendant would probably not have been found guilty of first degree murder. This is not to say that the jury would have acquitted defendant on all charges. Our review, however, does not require a probability of an acquittal on every charge, but an acquittal at the degree of culpability found by the jury. *See, e.g.*, Zuck v. State, 325 So2d 531, 537 (AlaCrCtApp 1975) (quoting Davis v. State, 18 So2d 282, 283 (Ala 1944)).

[¶17.] As we wrote in *Gehm*, new trial motions founded on newly discovered evidence "should be granted only in exceptional circumstances[.]" 1999 SD 82, ¶15, 600 NW2d at 540. We find no abuse of discretion in the circuit court's conclusion that such exceptional circumstances existed here.

[¶18.] Affirmed.

[¶19.] GILBERTSON, Chief Justice, and ZINTER, MEIERHENRY and SEVERSON, Justices, concur.